**FILED**

June 26, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_
DEPUTY

### IN THE UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF TEXAS

### AUSTIN DIVISION

**JAMES MICHAEL SAILORS,**
    **Plaintiff,**

**v.**

**Civil Action No. 1:26-CV-00165-DAE**

**OFC. KYLE JENNINGS #7076;**
**SGT. ALEXANDER LOMOVSTEV #6317;**
**OFC. JULIAN OGLE #7787;**
**OFC. VINCENT NGUYEN #9583;**
**OFC. JOE AGUILAR #8267;**
**OFC. JONATHAN BYNUM #5611;**
**ADA WILLA COCKSHUTT,**
    **Defendants.**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ADA WILLA COCKSHUTT'S

### MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)

### [DKT. 9]

### I. INTRODUCTION

Comes now Plaintiff James Michael Sailors, proceeding pro se, and files this Response in Opposition to Defendant ADA Willa Cockshutt's Motion to Dismiss (Dkt. 9). Defendant's Motion raises six grounds for dismissal. Each fails as a matter of law and fact.

Defendant's Motion rests on a single flawed premise: that Plaintiff's original Complaint failed to allege specific acts by ADA Cockshutt. Plaintiff's Complaint at paragraph 34 expressly preserved the theory that Defendant is sued only for acts outside protected prosecutorial advocacy. This Response, treated as a More Definite Statement pursuant to Fed. R. Civ. P. 12(e), now provides the specific factual allegations that establish Defendant's personal involvement and liability.

Among those specific facts is a fact Defendant's own attorneys should have recognized: ADA Cockshutt herself produced to Plaintiff, in criminal discovery, APD General Offense Report GO# 2023-2920641 (July 23, 2024) and the Axon body camera recording of the Mercedes seizure. GO# 2023-2920641 identifies by badge number every officer involved: Nguyen #9583 (initial report), Ogle #7787 (investigation and holds), Bynum #5611 (recovery, placed 'extended holds for Det Jennings and Det Ogle'), and Jennings (directed and maintained the Mazda hold). The Axon video documents Sergeant Lomovstev #6317 — the central coordinating officer across both seizures — acknowledging on camera that Plaintiff was the registered owner of the Mercedes before the seizure proceeded. Defendant's counsel argues at Dkt. 9 ¶2 that 'Plaintiff does not specify which Defendants seized the vehicle.' That argument is rebutted by the documents ADA Cockshutt produced with her own hands. She knew exactly which officers were involved, who coordinated the seizures, and what the Axon video showed. She produced the evidence. She watched it. She did nothing.

Defendant's six arguments and their dispositive flaws are as follows: (A) her absolute immunity argument misstates Van de Kamp v. Goldstein and ignores the functional test of Buckley v. Fitzsimmons; (B) her qualified immunity argument is premature and fails because the constitutional duties

at issue were clearly established for decades; (C) her personal involvement argument is answered by the specific factual allegations set forth herein; (D) her Fourth Amendment argument is a strawman Plaintiff does not advance against her; (E) her Parratt/Hudson argument fails because Jennings' deliberate, targeted refusal to remove an NCIC hold after receiving proof of ownership was not 'random or unauthorized' conduct and pre-deprivation process was practicable; and (F) her civil conspiracy argument ignores that circumstantial evidence of concerted action is legally sufficient. Additionally, her 12(b)(1) challenge, stated only in the caption and never briefed, is waived.

**II. STANDARD OF REVIEW**

A complaint survives Rule 12(b)(6) dismissal where it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). All well-pleaded factual allegations must be accepted as true and all reasonable inferences drawn in favor of Plaintiff. Sonnier v. State Farm Mut. Auto. Ins. Co., 509 F.3d 673, 675 (5th Cir. 2007). Pro se pleadings are held to a less stringent standard and must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Where a pro se plaintiff's complaint lacks specificity, the proper remedy is a more definite statement under Rule 12(e), not dismissal. A court should not dismiss a pro se complaint without at minimum providing the plaintiff an opportunity to amend. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998).

The burden of establishing entitlement to absolute prosecutorial immunity rests on the defendant, not on the plaintiff to disprove it. Burns v.

Reed, 500 U.S. 478, 486 (1991). Dismissal on immunity grounds at the pleading stage is improper 'unless it is apparent from the face of the complaint' that immunity applies. Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 618 (5th Cir. 1992).

Preliminary matter: Defendant's Motion is captioned as arising under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). However, Defendant advances no argument in the body of her Motion challenging subject-matter jurisdiction under Rule 12(b)(1). A motion that identifies a ground for dismissal but fails to brief it is waived. See, e.g., Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 560 (5th Cir. 2001). Defendant's 12(b)(1) challenge is accordingly waived and cannot serve as a basis for dismissal.

## III. SPECIFIC FACTUAL ALLEGATIONS — DEFENDANT COCKSHUTT'S PERSONAL ACTS AND OMISSIONS (MORE DEFINITE STATEMENT PURSUANT TO RULE 12(e))

Plaintiff supplies the following specific factual allegations regarding Defendant ADA Willa Cockshutt's individual conduct, treated as a More Definite Statement to the extent the Court deems the original Complaint insufficiently specific. All facts are within Plaintiff's personal knowledge and documented in the exhibits identified herein.

### A.  ADA Cockshutt Possessed Video Evidence of Officer Misconduct and Continued the Prosecution

During Plaintiff's criminal proceedings, Defendant ADA Willa Cockshutt produced to Plaintiff in criminal discovery a video recording from Plaintiff's Axon body camera footage. This video directly documented Officer Lomovstev's personal participation in the seizure of Plaintiff's vehicle and

Officer Ogle's presence at the scene. (Ex. E). By producing this video, Defendant demonstrated that she had actual, personal knowledge — not merely constructive knowledge — of the officers' conduct at the time of the seizure. Despite possessing this evidence, ADA Cockshutt took no action to: (1) seek dismissal of any charge arising from those officers' work; (2) report the officers' conduct to APD Internal Affairs; or (3) take any remedial step to address the constitutional violations she had directly observed on video.

### B.  ADA Cockshutt Received and Ignored Plaintiff's Written Notice of Specific Constitutional Violations

On or about August 10, 2025, Plaintiff delivered written correspondence directly to ADA Willa Cockshutt by email. That correspondence specifically identified: (i) that Officer Lomovstev had introduced himself under a false name at the scene of the vehicle seizure, as audible on the body camera recording she had already produced in discovery; (ii) that Officer Ogle was present at the seizure; and (iii) that no valid legal basis existed for the continued prosecution. (Ex. L — Email to ADA Cockshutt, Aug. 10, 2025). ADA Cockshutt took no remedial action in response to this written notice.

### C.  ADA Cockshutt Failed to Disclose Officer Impeachment Evidence in the Austin Proceedings — Brady/Giglio Violations

Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), require the prosecution to disclose all evidence material to guilt or punishment, including evidence bearing on the credibility and disciplinary history of testifying officers. Two categories of officer impeachment material were suppressed in Plaintiff's Austin criminal proceedings:

First, Officer Julian Ogle #7787 was formally suspended for ten (10) days by the Austin Police Department following Internal Affairs Investigation Control No. 2019-0530, for threatening a sitting state court judge. (Ex. G — APD Suspension Memorandum, January 17, 2020). This is classic Giglio material — documented prior misconduct bearing directly on a testifying officer's credibility. If Officer Ogle's investigative work product or testimony was used in any proceeding against Plaintiff, ADA Cockshutt was obligated to disclose this suspension record. It was within the Travis County DA's office's knowledge. Failure to produce it constitutes a Giglio violation.

Second, Officer Alexander Lomovstev #6317 was the subject of a prior Travis County felony indictment (Case No. D1DC21900126, February 13, 2022). (Ex. N). As the prosecutor in matters arising from Lomovstev's investigative work, ADA Cockshutt had direct access to this record through the DA's own office files. A prior felony indictment of an investigating officer is material impeachment evidence that is required to be disclosed. Failure to do so is a Brady/Giglio violation.

Third, APD Auto Theft's own written email communication stated that 'I am not finding a stolen vehicle report in our system or seeing where an officer was called out' regarding the Mazda CX-5. (Ex. C). This communication is facially exculpatory — it contradicts the theft allegation that served as the basis for the law-enforcement hold. If ADA Cockshutt possessed or had access to this communication and failed to disclose it, that is a Brady violation on the core fact of the prosecution.

**D.  ADA Cockshutt Knew Jennings Refused to Remove an NCIC Hold After Plaintiff Proved Ownership In Writing — 27 Days Before APD Even Physically Had the Vehicle**

The documentary record establishes the following precise sequence. On November 8, 2023, APD Auto Theft responded to Plaintiff's inquiry: 'I am not finding a stolen vehicle report in our system or seeing where an officer was called out.' (Ex. C). The police did not have the Mazda in their physical custody at this time.

On November 29, 2023, Detective Jennings emailed Plaintiff directly. His email stated: 'The vehicle is listed as stolen, as the victim reported it stolen... the vehicle has to remain listed as stolen at this time until I have evidence showing otherwise.' That same email was copied to Sergeant Lomovstev. (Ex. R — Jennings/Sailors Email Chain, Nov. 29, 2023). Within hours on November 29, Plaintiff responded to Jennings with five documentary attachments: photographs of the completed title transfer receipt executed under Tex. Transp. Code § 501.024. Plaintiff also pointed out that the City of Austin had issued him a parking citation for the Mazda — proving Austin's own municipal records simultaneously identified Plaintiff as the registered owner while Jennings maintained a stolen vehicle designation. Two city systems contradicted each other. Jennings ignored the one that proved lawful ownership.

On November 30, 2023, Jennings did not remove the hold. Instead, he responded by interrogating Plaintiff as if he were a suspect — demanding to know the nature of his relationship with the prior owner, the current location of the vehicle, and insisting on an in-person recorded interview. Plaintiff replied with the governing Texas statutory authority: Tex. Transp. Code §§ 501.024, 501.027, and 501.029, which provide that a title receipt evidences title. Plaintiff CC'd that November 30 response to PICC@traviscountytx.gov

— the Travis County District Attorney's Public Integrity and Complex Cases unit — and to Lomovstev directly. The Travis County DA's office received written notice of the Jennings hold and Plaintiff's ownership claim on November 30, 2023.

Jennings then went silent. He made no further substantive response. Twenty-seven days later, on December 26, 2023, Officer Bynum #5611 physically seized the Mazda. GO# 2023-2920641 — produced by ADA Cockshutt in criminal discovery — records Bynum's own words: 'I placed extended holds on both vehicles for Det Jennings and Det Ogle.' (Ex. F, p. 29). The Mazda was subsequently transferred to a third party and destroyed. Jennings held Plaintiff's title documents for 27 days, received statutory authority citations, received CC notice to his own sergeant and to the DA's office, and took no action to remove the hold. ADA Cockshutt, whose office received direct notice on November 30 and who possessed GO# 2023-2920641 in her discovery file, knew every fact described above and did nothing.

**E.  Lomovstev Forcibly Took the Mercedes Under Display of Authority and Threat of Arrest — Ogle Witnessed and Did Nothing — Cockshutt Had the Video**

On November 6, 2023, Plaintiff purchased a 2021 Mercedes AMG GT 63 S from BJ Motors, paying in full. BJ Motors confirmed the transaction and returned Plaintiff's keys. On January 25, 2024, Sergeant Lomovstev and Officer Ogle appeared at Plaintiff's location. Lomovstev admitted on the Axon body camera recording — which ADA Cockshutt later produced in Plaintiff's criminal discovery — that Plaintiff was the registered owner of the vehicle. (Ex. E). Despite this on-camera acknowledgment, Lomovstev then forcibly seized Plaintiff's vehicle and keys by display of law enforcement authority and explicit threat of arrest. No warrant had been obtained. No probable

cause existed independent of allegations Lomovstev himself had just acknowledged were inconsistent with Plaintiff's registered ownership. Officer Ogle #7787 was present throughout and witnessed the entire forcible taking. He did not intervene, did not object, and did not take any action to prevent the unconstitutional seizure. An additional officer whose identity Plaintiff has not yet been able to confirm was also present and likewise failed to intervene. This is the Fourth Amendment violation Plaintiff's complaint alleges: a warrantless, forcible seizure of titled property 'by display of authority and threat of arrest' with no lawful basis. (Dkt. 9 ¶ 2, describing Plaintiff's own allegations).

Following the seizure, the title to the Mercedes was transferred to Horizon Bank. Texas Department of Motor Vehicles Investigator Billy Curry confirmed in writing on February 2, 2024: 'the title has been reassigned to Horizon Bank.' (Ex. J — TxDMV Case No. 24-0004268). BJ Motors' own counsel confirmed the same: APD 'returned the vehicle to Horizon Bank, along with title to the vehicle.' (Ex. — BJ Motors Civil Claims Correspondence). This title transfer occurred without any judicial forfeiture proceeding, without a petition filed within the 30-day statutory period required by Tex. Code Crim. Proc. art. 59.04, without notice to Plaintiff as the titled owner, and without any judicial hearing. The transfer was extrajudicial, unlawful, and permanent. Plaintiff lost titled property valued in excess of $43,000 without due process of law.

ADA Cockshutt possessed the Axon video before she produced it in criminal discovery. That video documents: (1) Lomovstev's on-camera admission that Plaintiff was the registered owner; (2) Lomovstev's subsequent forcible taking of the vehicle and keys under threat of arrest, without a warrant; and (3) Officer Ogle's presence as a witness who took no

action to intervene. Cockshutt produced this video. She therefore watched her own officer commit a warrantless, forcible seizure of titled property on record — after admitting ownership on that same record — and she did nothing. She did not move to dismiss. She did not report the conduct to Internal Affairs. She did not seek return of the vehicle. She did not oppose the subsequent extrajudicial title transfer to Horizon Bank. She prosecuted Plaintiff using reports generated by the same officers whose unconstitutional conduct she had personally reviewed on video.

**F.  The DA's Own Office Ultimately Rejected the UUMV Charge After Ten Months Proving Cockshutt's Office Knew the Case Was Unsupported and Held It Anyway**

Travis County Case No. D-1-DC-23-209819 — the Unauthorized Use of a Motor Vehicle charge arising from the Mercedes seizure — was filed December 14, 2023. After ten months and nine unindicted designations, the Travis County District Attorney's office entered a 'DA REJECTION/NO CHARGES FILED' on October 25, 2024. (Ex. — Case Summary, D-1-DC-23-209819). The Travis County DA — Cockshutt's employer — ultimately concluded that the evidence did not support charging Plaintiff with UUMV of the Mercedes. Yet during those ten months, ADA Cockshutt possessed the Axon video of Lomovstev acknowledging Plaintiff's registered ownership, received Plaintiff's documented communications asserting his rights, and held the charge without action. The DA's institutional rejection of this charge is itself evidence that the prosecution was unsupported from the start.

**G.  The False 'Deceased' Assertion Was Used to Justify the Warrantless Seizure —
Demonstrably Refuted by Plaintiff's Own Communications to Cockshutt's Office**

To justify the warrantless seizure of the Mercedes, officers relied on Horizon Bank's civil assertion that Plaintiff was deceased — that 'James Sailors' was the identity of a deceased individual. (Dkt. 9 ¶ 2). This assertion was demonstrably false. Plaintiff had been communicating directly with Detective Jennings, Sergeant Lomovstev, and the Travis County Public Integrity unit by email since November 29, 2023 — weeks before the Mercedes seizure on January 25, 2024. Plaintiff's email address, phone numbers, and physical address appear in APD Offense Report GO# 2023-2920641, produced by ADA Cockshutt in criminal discovery. The 'deceased' assertion that purportedly justified a warrantless seizure was not only false — it was refuted by documents within ADA Cockshutt's own criminal file.

**H.  ADA Cockshutt Failed to Dismiss Tainted Cases Despite Actual Knowledge
of Officer Misconduct**

Officer Lomovstev was indicted in a separate Travis County proceeding (D1DC21900126, February 13, 2022) for prior felony conduct. (Ex. N). Officer Ogle was formally suspended by APD for ten (10) days following Internal Affairs Investigation Control No. 2019-0530, for threatening a sitting state court judge. (Ex. G). These facts were matters of public record and within the knowledge of the Travis County District Attorney's office, of which ADA Cockshutt was an agent. ADA Cockshutt's decision to continue prosecutions grounded on the investigative work product of officers she knew to have engaged in documented prior misconduct — without any effort to review,

dismiss, or refer those cases — is itself a specific, named act of deliberate indifference to Plaintiff's constitutional rights.

## I.  Plaintiff Exhausted Every Available State and Administrative Remedy Before Filing This Action — Each Was Rendered Meaningless by Defendants

Before filing this § 1983 action, Plaintiff pursued every state and administrative remedy available to him with respect to both vehicle seizures. The record of those efforts is undisputed and must be credited on this motion: (1)  Formal written demand letter transmitted to the City of Austin asserting Plaintiff's documented ownership of both vehicles and demanding their immediate return. The City of Austin provided no response.

(2)  Complaint filed with the Austin Police Department Public Integrity Command unit (PICC). Plaintiff CC'd PICC@traviscountytx.gov on his November 30, 2023 email to Detective Jennings providing proof of title. No corrective action was taken by APD or by the District Attorney's office, which coordinates with the Public Integrity unit.

(3)  Formal complaint filed with the Austin Police Oversight Office (OPO). Intake was accepted December 4–5, 2023. (Ex. — OPO Intake Record). No corrective action resulted.

(4)  Complaint to the Texas Department of Motor Vehicles, Case No. 24-0004268. TxDMV Investigator Billy Curry responded on February 2, 2024, confirming that 'the title has been reassigned to Horizon Bank.' (Ex. J). TxDMV had no authority to reverse a completed title transfer and took no

corrective action.

(5)  Plaintiff filed a formal property hearing request with the Austin Municipal Court on August 14, 2025, pursuant to Chapter 47 of the Texas Code of Criminal Procedure — the statutory mechanism by which a person asserting ownership of property seized in connection with a criminal proceeding may petition for judicial return of that property. Tex. Code Crim. Proc. art. 47.01 et seq. The court docketed the matter as Case No. AMC00681634. Court Clerk Lead Lissa Capobianco issued a Notice to Appear on August 19, 2025, and a second Notice to Appear on October 15, 2025. Plaintiff was detained in Travis County jail during that period and was unable to appear at the originally scheduled hearing dates. Upon release, Plaintiff contacted the court on December 21, 2025. Court Clerk Assistant Meredith Davis rescheduled the property hearing to February 18, 2026, 10:30 AM, Courtroom 3. The hearing was held. It was entirely fruitless. By the time the hearing occurred, APD had caused the title to the Mercedes AMG GT 63 S (VIN# W1K2J5KB7LA075512) to be transferred to Horizon Bank — a transfer confirmed by TxDMV Investigator Billy Curry as of February 2, 2024 (Ex. J). That transfer occurred eighteen (18) months before Plaintiff even filed the Chapter 47 claim, and more than two (2) years before the rescheduled hearing date. The statutory remedy could not operate because the property it was designed to restore no longer existed in a form the court could reach — APD had already completed the extrajudicial title transfer without any Chapter 59 forfeiture petition, without notice to Plaintiff, and without any court order. See In re Property Claim of James Michael Sailors, Austin Mun. Ct. Case No. AMC00681634 (Feb. 18, 2026) (public court record, subject to judicial notice, Fed. R. Evid. 201).

Plaintiff respectfully requests that this Court take judicial notice of Austin Municipal Court Case No. AMC00681634 pursuant to Federal Rule of Evidence 201(b)(2). The docket, hearing record, and disposition of that case are public court records not subject to reasonable dispute and capable of accurate and ready determination by resort to the Austin Municipal Court's publicly available case portal at https://austin-portal.ecourt.com/public-portal/. The existence of the proceeding, its docketing date, its hearing date of February 18, 2026, and the court's inability to restore title that APD had already transferred are all verifiable from that public record. Fed. R. Evid. 201(c)(2) (court must take judicial notice if a party requests it and supplies the necessary information).

The Chapter 47 record is not a procedural footnote. It is dispositive proof that no adequate state post-deprivation remedy existed — or more precisely, that Defendants affirmatively destroyed the adequacy of the one statutory remedy designed to address exactly this situation, and then completed that destruction before the remedy could even be invoked. APD transferred the Mercedes title to Horizon Bank in January 2024. Plaintiff was not able to file the Chapter 47 claim until August 2025 — partly because Plaintiff was subject to an active criminal prosecution maintained by Cockshutt's own office (UUMV Case No. D-1-DC-23-209819, maintained for ten months before 'DA REJECTION/NO CHARGES FILED' on October 25, 2024), and partly because Plaintiff was detained in Travis County jail during the pendency of the property proceedings. The sequence is not coincidental: the same state actors who seized the property without process maintained a prosecution that constrained Plaintiff's ability to pursue the only remedy that could have restored it. A state-provided remedy that Defendants themselves render inaccessible before it can be exercised is not an 'adequate' remedy

within the meaning of Parratt/Hudson. Hudson v. Palmer, 468 U.S. 517, 534 (1983); Zinermon v. Burch, 494 U.S. 113, 136-38 (1990). A defendant cannot simultaneously seize property without process, transfer it to a third party before judicial review can issue, maintain a prosecution that delays the owner's access to the courts, and then invoke the adequacy of the very remedy she defeated. The legal system does not permit that result.

**IV. ARGUMENT**

**A.  DEFENDANT'S ABSOLUTE IMMUNITY ARGUMENT FAILS BECAUSE SHE MISREADS VAN DE KAMP AND CANNOT MEET HER BURDEN UNDER BURNS v. REED**

Defendant argues that absolute prosecutorial immunity shields all of her conduct. She is wrong for two independent reasons: (1) she misstates the holding of her primary authority, Van de Kamp v. Goldstein, 555 U.S. 335 (2009); and (2) she has not met — and cannot meet — the burden of establishing that each specific act at issue was quasi-judicial in nature.

**1.  The Functional Test Controls, and Defendant Bears the Burden**

Absolute prosecutorial immunity is determined by function, not by title. '[T]he immunity attaches to his function, not to the [prosecutor] himself.' Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). The burden of establishing entitlement to absolute immunity 'rests with the official claiming immunity.' Burns v. Reed, 500 U.S. 478, 486 (1991). Defendant has not carried that burden with respect to the specific acts identified in Section III above — denying a named

discovery request, failing to act on direct written notice of constitutional violations, and allowing an unlawful property hold to proceed to forfeiture. None of these acts is 'intimately associated with the judicial phase of the criminal process.' Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

### 2. Van de Kamp Does Not Protect Individual Brady Denials

Defendant relies heavily on Van de Kamp v. Goldstein, 555 U.S. 335 (2009), for the proposition that administrative and supervisory acts related to prosecution are absolutely immune. (Dkt. 9 ¶ 9). This misstates Van de Kamp. The Supreme Court in Van de Kamp held that a DA's office-wide systemic training policies and administrative systems for managing Brady material were absolutely immune because those systemic decisions were 'directly connected with the conduct of a trial.' 555 U.S. at 345. The Van de Kamp Court expressly limited its holding to 'the office's systems for disseminating such information.' Id. at 348-49. The Court did not hold — and explicitly did not address — whether an individual prosecutor's case-specific decision to deny a named defendant's specific discovery request for identified exculpatory material constitutes a protected quasi-judicial act. That question was left open. Id. at 349.

The distinction is dispositive here. Defendant Cockshutt is not sued for failing to implement an office-wide Brady training program. She is sued for her case-specific failure to disclose identified impeachment material — the IA suspension record of Officer Ogle and the prior indictment of Officer Lomovstev — that was within her personal knowledge and directly bore on the credibility of the officers whose work product she used to prosecute Plaintiff. This is not a systemic administrative policy. It is a named, case-

specific act of suppression directed at a specific defendant. Van de Kamp does not protect it.

### 3.  Buckley and Burns Confirm That Investigative Acts Receive Only Qualified Immunity

The Supreme Court has expressly held that when a prosecutor 'performs the investigative functions normally performed by a detective or police officer' rather than acting as an officer of the court, absolute immunity does not apply. Buckley, 509 U.S. at 273. The acts alleged here — reviewing video evidence of officer misconduct, receiving written notice of Brady violations, and deciding whether to deny specific discovery requests — are investigative and administrative functions, not courtroom advocacy. They are precisely the kind of acts for which, under Burns and Buckley, the prosecutor receives qualified immunity at most.

The Fifth Circuit's citation to Hoag-Watson v. Guadalupe County, Tex., 591 F.3d 431 (5th Cir. 2009) (Dkt. 9 ¶ 7), for the proposition that 'evaluating evidence and interviewing witnesses as [a prosecutor] prepares for trial' is protected, does not help Defendant. Reviewing a body camera video in discovery — and then deciding to take no remedial action regarding the officers depicted in it — is not 'preparing for trial.' It is investigation-phase analysis with post-analysis inaction that directly caused Plaintiff's deprivation.

### 4.  Kerr v. Lyford Does Not Shield Malicious or Unauthorized Conduct Here

Defendant cites Kerr v. Lyford, 171 F.3d 330 (5th Cir. 1999), for the proposition that absolute immunity protects even malicious conduct. (Dkt. 9 ¶

8). Kerr applies only to conduct within the scope of prosecutorial immunity in the first place. It does not expand the scope of immunity. Because the specific acts identified here fall outside that scope under the functional test of Buckley, Kerr is inapplicable.

**B.  DEFENDANTS' PERSONAL INVOLVEMENT ARGUMENT IS ANSWERED BY THE SPECIFIC ALLEGATIONS IN SECTION III AND BY PLAINTIFF'S COMPLAINT ¶ 34**

Defendant argues that Plaintiff 'never names any actions taken by Defendant Cockshutt.' (Dkt. 9 ¶ 13). This argument was potentially persuasive with respect to the original Complaint's specificity, but it cannot survive this Response. Section III above identifies five specific, documented, individual acts and omissions by ADA Cockshutt personally, each tied to a specific exhibit, each causally connected to a specific constitutional deprivation:

(1)  Her personal production in criminal discovery of the Axon video showing Lomovstev acknowledging Plaintiff's registered ownership of the Mercedes before the seizure proceeded — establishing her actual knowledge that the seizure occurred over Lomovstev's own video-documented admission of Plaintiff's title — followed by her decision to take no remedial action;

(2)  Her office's receipt on November 30, 2023, of Plaintiff's email to the Travis County Public Integrity and Complex Cases unit, copying Jennings and Lomovstev, asserting Plaintiff's ownership of the Mazda and demanding removal of the unlawful hold — followed by no action for 27 days until the Mazda was physically seized;

**(3)** Her personal receipt of Plaintiff's written correspondence on August 10, 2025, identifying by name that Lomovstev used a false name at the scene, that Ogle was present, and that no legal basis existed for continued prosecution — followed by no action;

**(4)** Her failure to disclose the IA suspension record of Officer Ogle (Control No. 2019-0530) and the prior felony indictment of Officer Lomovstev (D1DC21900126) as Brady/Giglio impeachment material in the Austin proceedings;

**(5)** Her failure to intervene to prevent the extrajudicial transfer of the Mercedes title to Horizon Bank without any forfeiture petition, notice to Plaintiff, or judicial hearing, as required by Tex. Code Crim. Proc. art. 59.04, while possessing Lomovstev's video admission of Plaintiff's ownership in her own discovery file;

**(6)** Her office's ten-month maintenance of UUMV Case No. D-1-DC-23-209819, ultimately rejected on October 25, 2024 as 'DA REJECTION/NO CHARGES FILED,' demonstrating the charge was unsupported by sufficient evidence throughout the period it was maintained; and

**(7)** Her failure — with actual knowledge of the unlawful Mazda hold — to take any action to prevent the forfeiture and destruction of Plaintiff's titled vehicle.

These are specific acts. They are documented. They establish the causal connection between Defendant's conduct and Plaintiff's deprivation required by Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002), and Rizzo v. Goode, 423 U.S. 362, 371-72 (1976). Personal involvement is squarely alleged.

Defendant's counsel argues additionally at Dkt. 9 ¶ 2 that 'Plaintiff does not specify which Defendants seized the vehicle.' This argument is directly rebutted by GO# 2023-2920641 — the APD General Offense Report that ADA Cockshutt herself produced in Plaintiff's criminal discovery. That report names Officer Nguyen #9583 as the initial reporting officer; Officer Ogle #7787 as the investigator who issued the pick-up order and directed the NCIC/TCIC vehicle entry; Officer Bynum #5611 as the officer who physically recovered both vehicles on December 26, 2023, noting he placed 'extended holds on both vehicles for Det Jennings and Det Ogle'; and Detective Jennings as the officer who directed and maintained those holds. ADA Cockshutt knew which officers seized the vehicles. She produced the document that names them. Her counsel's argument that no defendants were identified is contradicted by her own criminal discovery production.

## C.  PARRATT/HUDSON DOES NOT APPLY: JENNINGS' REFUSAL WAS A DELIBERATE,TARGETED DEPRIVATION AFTER ACTUAL NOTICE — ZINERMON CONTROLS

Defendant's most substantive legal argument — and her most significant strategic error — appears at pages 8-9 of her Motion. She invokes the Parratt/Hudson doctrine, which provides that a random and unauthorized intentional deprivation of property does not violate procedural due process if the state provides an adequate post-deprivation remedy. (Dkt. 9 ¶¶ 17-18). This argument defeats itself.

**1.  Jennings' Refusal Was Not 'Random or Unauthorized' — It Was a Deliberate, Targeted Decision Made After Receiving Actual Notice of Plaintiff's Ownership**

Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v. Palmer, 468 U.S. 517 (1983), apply exclusively to deprivations that are 'random and unauthorized' — that is, deprivations the State could not have anticipated and for which it was impractical to provide pre-deprivation process. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996). The doctrine 'protects the state from liability for failing to provide a predeprivation process in situations where it cannot anticipate the random and unauthorized actions of its officers.' Id.

Jennings' deprivation of Plaintiff's property was neither random nor unanticipated. Before APD ever physically seized the Mazda, Plaintiff personally contacted Detective Jennings and presented proof of title. At that moment, the State — through Jennings — had actual, specific notice that a lawful owner was asserting rights to a vehicle subject to an NCIC hold. This is not a situation the State could not anticipate. It is a situation the State created and could have resolved with a simple administrative act: cancellation of the NCIC entry. Jennings' deliberate refusal, with proof of ownership in hand, to remove the hold is a targeted, intentional deprivation — not 'random' officer misconduct. The Supreme Court has distinguished between random unauthorized conduct and a state actor's deliberate decision to deprive a known owner of property. Zinermon v. Burch, 494 U.S. 113, 136-38 (1990).

Moreover, under Zinermon, even where a specific officer's conduct was unauthorized, Parratt/Hudson does not apply if 'the state could have provided predeprivation procedures but did not.' 494 U.S. at 137. Texas law enforcement agencies maintain NCIC/TCIC stolen-vehicle entries. The State

absolutely has the power to create — and to require — a review mechanism when a vehicle owner presents proof of title to a detective disputing an NCIC entry. The State's failure to provide any such mechanism, combined with Jennings' individual refusal to act upon Plaintiff's proof, is itself the procedural due process violation. Pre-deprivation process was not just practicable — it was demanded, and deliberately withheld. See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) ('[T]he Parratt rule does not apply where the deprivation is... a foreseeable consequence' of state action the state could have anticipated).

### 2.  Plaintiff Exhausted Every Available State Remedy —Each Was Rendered Meaningless by Defendants' Own Actions

Defendant implies that Plaintiff should have pursued state remedies before invoking § 1983. The record is dispositive on this point. Plaintiff pursued every state and administrative remedy available to him, in sequence, over more than a year. Each was denied, ignored, or rendered meaningless: (1) Formal demand letter to the City of Austin asserting ownership and demanding return of both vehicles — no response.

(2) Complaint to APD's Public Integrity Unit (PICC) — no response or corrective action.

(3) Complaint to the Austin Police Oversight Office (OPO) — intake accepted December 4–5, 2023; no corrective action resulted.

(4) TxDMV complaint, Case No. 24-0004268 — TxDMV Investigator Billy Curry confirmed on February 2, 2024, that title to the Mercedes AMG had

already been reassigned to Horizon Bank. TxDMV could not compel reversal of a completed title transfer. (Ex. J.)

(5) Chapter 47 property hearing, Austin Municipal Court Case No. AMC00681634 — Plaintiff filed a formal property hearing request on August 14, 2025. The court issued two Notices to Appear (August 19, 2025 and October 15, 2025). Plaintiff was detained in Travis County jail during those dates and could not appear. After release, Plaintiff requested rescheduling; the court scheduled the hearing for February 18, 2026, 10:30 AM, Courtroom 3 (Court Clerk Meredith Davis confirmation, Dec. 22, 2025). The hearing was held. It was entirely fruitless: APD had transferred title to Horizon Bank in January 2024 — confirmed by TxDMV on February 2, 2024 (Ex. J) — eighteen months before the Chapter 47 claim was even filed. The statutory remedy was a nullity because Defendants had completed the extrajudicial title transfer years before any court could order restoration. See In re Property Claim of James Michael Sailors, Austin Mun. Ct. Case No. AMC00681634 (Feb. 18, 2026) (public record, judicial notice requested pursuant to Fed. R. Evid. 201).

In re Property Claim of James Michael Sailors, Austin Mun. Ct. Case No. AMC00681634 (Feb. 18, 2026), is the most significant fact in this exhaustion record. Texas Code of Criminal Procedure art. 47.01 et seq. establishes a judicial claim process for property seized in connection with a criminal matter. It is the State's designated statutory remedy for exactly this type of dispute. When Plaintiff filed the Chapter 47 claim on August 14, 2025, the remedy was already structurally unavailable — not because the claim was weak, but because APD had accomplished the irreversible extrajudicial title transfer eighteen months earlier. TxDMV confirmed the transfer to

Horizon Bank as of February 2, 2024 (Ex. J). No Chapter 47 court order could undo a completed title transfer to a third-party bank that no longer holds the vehicle. Moreover, Plaintiff was detained in Travis County jail during the first two scheduled hearing dates (August–October 2025), requiring rescheduling to February 18, 2026 — further evidence that the State's own prosecutorial and custodial apparatus constrained Plaintiff's practical ability to reach the court. A 'remedy' that can be defeated by the wrongdoer's unilateral action before the hearing is held — and whose pursuit is impeded by the same actors' prosecution of the claimant — is not a meaningful remedy within the meaning of Parratt/Hudson. Hudson v. Palmer, 468 U.S. 517, 534 (1983); Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Plaintiff requests judicial notice of Case No. AMC00681634 pursuant to Fed. R. Evid. 201(b)(2) and (c)(2).

### 3.  The Texas Conversion Tort Is Not an Adequate Post-Deprivation Remedy for Property Already Transferred and Destroyed

Even if Parratt/Hudson applied (it does not), and even if all five state remedies catalogued above were somehow inadequate only through Plaintiff's own fault (they were not), Defendant's fallback reliance on Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994), for the adequacy of Texas conversion tort (Dkt. 9 ¶ 18) still fails. Murphy involved property that was damaged but recoverable. Here, the Mazda was transferred to a third party and destroyed. The Mercedes title was reassigned to Horizon Bank without Chapter 59 forfeiture proceedings. A conversion action against a third-party transferee who no longer holds destroyed property does not constitute a meaningful post-deprivation remedy. Hudson, 468 U.S. at 534-35. The inadequacy is not

theoretical — it was proven in fact when every avenue Plaintiff pursued produced no restoration of his property.

## D.  PLAINTIFF DOES NOT ADVANCE A FOURTH AMENDMENT CLAIM AGAINST ADA COCKSHUTT PERSONALLY

Defendant's Section D argues that Plaintiff failed to plead ADA Cockshutt's involvement in the physical seizure or the obtaining of a warrant. (Dkt. 9 ¶¶ 14-16). This is a strawman. Plaintiff does not contend that ADA Cockshutt personally executed a search, seized his vehicles, or participated in obtaining a warrant. Plaintiff's claims against Defendant Cockshutt sound in the Fourteenth Amendment (due process, Brady, deliberate indifference to known constitutional violations, and deprivation of property through inaction) and in 42 U.S.C. § 1983 conspiracy — not in the direct execution of a Fourth Amendment seizure. Defendant's Section D is entirely beside the point and cannot support dismissal of the claims that are actually alleged.

## E.  QUALIFIED IMMUNITY DOES NOT SHIELD DEFENDANT'S INVESTIGATIVE AND ADMINISTRATIVE ACTS

Defendant argues in the alternative that she is entitled to qualified immunity because Plaintiff has not alleged 'deliberate indifference' and has not identified a clearly established right that she violated. (Dkt. 9 ¶ 11). Both contentions fail.

### 1.  The Brady/Giglio Duty Has Been Clearly Established Since 1963 and 1972

Brady v. Maryland was decided in 1963. Giglio v. United States, 405 U.S. 150 (1972), established that impeachment evidence bearing on a

witness's credibility — including prior misconduct and disciplinary history — is Brady material. Kyles v. Whitley, 514 U.S. 419 (1995), clarified that the prosecutor's Brady duty encompasses all material evidence in the possession of the government, including law enforcement records. No reasonable ADA in 2023 could have believed that prosecuting a defendant using the work product of officers with documented disciplinary records — without disclosing those records as Giglio material — was constitutionally permissible. The IA suspension of Officer Ogle for threatening a judge and the prior felony indictment of Officer Lomovstev were squarely within this clearly established duty to disclose. 'Officials can still be on notice that their conduct violates established law even in novel factual circumstances.' Hope v. Pelzer, 536 U.S. 730, 741 (2002). Qualified immunity is unavailable on the Brady/Giglio claims.

## 2. Deliberate Indifference Is Established by the Written Notices Defendant Received

Defendant contends Plaintiff has not alleged deliberate indifference. (Dkt. 9 ¶ 11). The allegations in Section III above establish this element directly: ADA Cockshutt received two written communications from Plaintiff on August 10 and 20, 2025, identifying specific constitutional violations by name, citing specific evidence, and requesting specific remedies. She responded with inaction. An official who receives written, specific notice of an ongoing constitutional violation and deliberately disregards it exhibits deliberate indifference as a matter of law. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994) (deliberate indifference requires that official 'knows of and disregards' the substantial risk of serious harm). Defendant knew. She disregarded. That is deliberate indifference.

### 3.  Dismissal on Qualified Immunity Grounds at the Pleading Stage Is Premature

The qualified immunity inquiry requires examining the facts in the light most favorable to Plaintiff. Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (per curiam). Dismissal on qualified immunity grounds at the 12(b)(6) stage is 'improper unless it is apparent from the face of the complaint that the defendant is entitled to qualified immunity.' Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 618 (5th Cir. 1992). With the specific allegations now on record, it is not apparent from the face of the pleadings that Defendant is entitled to qualified immunity. Discovery is required. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

### F.  PLAINTIFF HAS ADEQUATELY PLED CIVIL CONSPIRACY AGAINST ADA COCKSHUTT — LOMOVSTEV PERSONALLY COORDINATED ALL SEIZURES

Defendant argues that Plaintiff has not shown 'participation, knowledge or intent' on her part in any conspiracy. (Dkt. 9 ¶ 20). This ignores the established rule that a § 1983 civil conspiracy may be shown through circumstantial evidence and does not require direct proof of a formal agreement. Hobbs v. Hawkins, 968 F.2d 471, 480 (5th Cir. 1992). 'A plaintiff may rely on indirect evidence to prove a § 1983 conspiracy.' Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982).

The record documents a single officer at the center of both vehicle seizures: Sergeant Alexander Lomovstev #6317. Lomovstev personally coordinated both seizures, using different officers to execute each one while maintaining his own supervisory control throughout:

**Mazda seizure:**  Detective Jennings placed and maintained the NCIC hold on the Mazda after Plaintiff transferred title. On November 29, 2023 — the day Jennings first contacted Plaintiff about the Mazda — Jennings copied Lomovstev on his email. (Ex. R). Lomovstev was therefore briefed on and aware of Plaintiff's ownership claim from the very day Jennings refused to remove the hold. APD Offense Report GO# 2023-2920641 confirms that Officer Bynum placed extended holds 'for Det Jennings and Det Ogle' on December 26, 2023 — with Ogle working in coordination with Lomovstev throughout the Auto Theft Division investigation.

**Mercedes seizure:**  Lomovstev personally coordinated the Mercedes seizure through APD's interface with Horizon Bank, acting in concert with Officers Ogle, Aguilar, and Bynum. (Dkt. 9 ¶ 2: 'Co-Defendants Aguilar and Lomovstev acted under the color of state law to facilitate coordination between Horizon Bank and other law-enforcement defendants'). On January 25, 2024, Lomovstev was present at the Mercedes seizure, admitted on video that Plaintiff was the registered owner, and proceeded with the seizure regardless. (Ex. E). The Mercedes was then transferred to Horizon Bank with title, without any forfeiture proceeding, pursuant to Lomovstev's coordination. (TxDMV Case No. 24-0004268, Ex. J).

Lomovstev's coordinating role across both seizures — using Jennings for the Mazda hold and himself/Ogle/Aguilar/Bynum for the Mercedes — while having actual knowledge of Plaintiff's ownership claims at every step, constitutes direct evidence of a meeting of the minds to deprive Plaintiff of

property rights not lawfully attainable through civil process. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

ADA Cockshutt's role in the conspiracy is specific: she received the Travis County Public Integrity unit notice on November 30, 2023; she possessed GO# 2023-2920641 naming every officer; she possessed the Axon video of Lomovstev's ownership admission; she watched the UUMV charge sit for ten months before her own office rejected it; she took no action at any point to break the chain of coordinated deprivation. An official who possesses the complete documentary record of a multi-officer coordinated scheme to seize titled property without legal process, and who continues the prosecution without disclosure or intervention, participates in the perpetuation of the conspiracy. Plaintiff's § 1983 conspiracy claim against ADA Cockshutt is adequately pled.

Defendant cites Triplex Communications, Inc. v. Riley, 900 S.W.2d 716 (Tex. 1995) — a Texas state standard inapplicable to federal § 1983 conspiracy claims. The federal elements are: (1) an agreement between two or more state actors; (2) to act in concert to implement an unconstitutional act; and (3) an actual deprivation of rights. Cinel, 15 F.3d at 1343. All three are satisfied by the documented record of Lomovstev's cross-case coordination, Jennings' execution of the Mazda hold, and Cockshutt's prosecutorial cover that allowed the scheme to continue undisturbed.

**G.  THE MOTION TO DISMISS IS AN ATTEMPT TO FORECLOSE DISOVERY
DIRECT CONSPIRACY EVIDENCE IN DEFENDANTS' EXCLUSIVE
POSSESSION —DISMISSAL BEFORE THAT DISCOVERY WOULD
PERMANENTLY DEFEAT JUSTICE**

The direct evidence that would conclusively prove the § 1983 conspiracy alleged here — the meeting of the minds between ADA Cockshutt and co-defendants Lomovstev, Jennings, and Ogle — consists of communications that Plaintiff does not yet possess and cannot obtain without discovery: the phone records, text messages, internal emails, and inter-agency communications between ADA Cockshutt, Detective Jennings, Sergeant Lomovstev, Officer Ogle, and Travis County DA personnel regarding the seizures of Plaintiff's vehicles, the maintenance of the unlawful holds, and the prosecution decisions that followed. These communications are in the exclusive possession and control of Defendants and the City of Austin and Travis County. Plaintiff cannot obtain them without a court order and the commencement of formal discovery.

This is precisely the situation in which dismissal at the pleading stage is most dangerous and most unjust. A § 1983 conspiracy claim, by its nature, involves a meeting of the minds between state actors whose communications with one another are shielded from public view. The Supreme Court recognized in Twombly that conspiracy claims present a 'chicken-and-egg' problem: 'a plaintiff's access to [direct evidence] prior to discovery may be limited.' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Where, as here, the direct evidence of the agreement is exclusively within the defendants' control, courts should 'be especially hesitant to grant motions to dismiss.' See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The Fifth Circuit has held that § 1983 conspiracy claims require only circumstantial evidence sufficient to raise a plausible inference at the pleading stage. Hobbs v.

Hawkins, 968 F.2d 471, 480 (5th Cir. 1992). The circumstantial record here — Lomovstev's cross-case coordination, Jennings' 27-day refusal to remove a hold after receiving proof of ownership while CC'ing Lomovstev, Ogle's witnessed failure to intervene at a forcible warrantless seizure, and Cockshutt's unbroken inaction despite possessing the Axon video, the offense report, and the PICC notice — is sufficient to raise a plausible inference of coordinated agreement. Discovery of defendants' direct communications would convert that inference into proof.

Granting this motion to dismiss would accomplish exactly what a conspiracy requires to succeed: it would cut off, permanently and irreversibly, the plaintiff's access to the only evidence that would expose the coordination directly. The motion to dismiss is not a threshold legal determination — it is a pre-emptive evidentiary ruling that forecloses the discovery record before it can be built. Courts in this Circuit have refused to allow the immunity doctrine to function as a tool for preventing plaintiffs from obtaining the evidence needed to prove claims that survived the pleading standard. Pearson v. Callahan, 555 U.S. 223, 241 (2009) (noting courts may address merits before immunity where early resolution serves judicial efficiency AND where discovery is needed to develop the factual record).

Plaintiff therefore requests, in addition to denial of the Motion to Dismiss, that this Court enter a preservation order directing all Defendants, the City of Austin, and the Travis County District Attorney's office to immediately preserve and not destroy, alter, or delete any and all communications — including phone records, text messages, emails, internal memoranda, and APD/DA office correspondence — between or among ADA Cockshutt, Sergeant Lomovstev, Detective Jennings, Officer Ogle, Officer Aguilar, and Officer Bynum, relating to Plaintiff James Michael Sailors, the

Mazda CX-5 (VIN# JM3KFBBM3N0595282), the Mercedes AMG GT 63 S (VIN# W1K2J5KB7LA075512), or any associated criminal proceedings. Failure to preserve this evidence would constitute spoliation warranting adverse inference instructions at trial. Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); see also Fed. R. Civ. P. 37(e).

### V. EXHIBITS IN SUPPORT OF THIS RESPONSE

The following exhibits are incorporated and attached or on file with the Court:

**Ex. A:** Title Transfer Receipt — Mazda CX-5, VIN# JM3KFBBM3N0595282 (September 11, 2023)

**Ex. B:** 311 Police Report Filed by Plaintiff (September 22, 2023)

**Ex. B1:** Threatening Text Messages from Prior Owner (Extortion Evidence)

**Ex. C:** APD Auto Theft Email — 'I am not finding a stolen vehicle report in our system' (November 8, 2023)

**Ex. D:** Demand for Remedy to APD Auto Theft (November 13, 2023)

**Ex. E:** Video Evidence — Axon Body Camera Recording of Sergeant Lomovstev and Officer Ogle at Scene of Mercedes Seizure — Produced by ADA Cockshutt in Criminal Discovery — MANUALLY FILED WITH CLERK'S OFFICE (Flash Drive, file size exceeds CM/ECF upload limit)

**Ex. F:** APD General Offense Report, GO# 2023-2920641 (Redacted, July 23, 2024)

**Ex. G:** APD Memorandum — Suspension of Officer Julian Ogle #7787, IA Control No. 2019-0530 (January 17, 2020)

**Ex. H:** Office of Police Oversight (OPO) Intake Correspondence (December 4-5, 2023)

**Ex. I:**  Arrest Record — Case D-1-DC-23-209817

**Ex. J:**  Texas DMV Complaint File, Case No. 24-0004268 — Investigator Billy Curry

**Ex. K:**  Correspondence — Plaintiff's Discovery Requests and ADA Cockshutt's Denials

**Ex. L:**  Email Correspondence to ADA Cockshutt — August 10 and 20, 2025 — Identification of False Name Used at Scene, Ogle's Presence, Brady Violations, and Known Officer Misconduct

**Ex. M:**  Discovery Drive Correspondence and Brady Material Documentation

**Ex. N:**  Lomovstev Indictment, Travis County Case D1DC21900126 (February 13, 2022)

**Ex. O:**  Plaintiff's More Definite Statement (on file with the Court)

**Ex. P:**  Photograph Evidence — Officer Ogle Under False Name at Scene

**Ex. Q:**  TxDMV NPR Records — Plaintiff as Registered Owner

**Ex. R:**  RE: Stolen Mazda Email Chain — Detective Jennings / Plaintiff Correspondence, November 29, 2023 – January 23, 2024 (includes five title document attachments transmitted November 29, 2023)

**Ex. S:**  Austin Municipal Court Case No. AMC00681634 — Chapter 47 Property Hearing Request and Scheduling Correspondence (August 14, 2025 – December 22, 2025)

**Ex. T:**  460th District Court Case Summary — Case No. D-1-DC-23-209819 — Unauthorized Use of Motor Vehicle Charge — DA REJECTION/NO CHARGES FILED October 25, 2024 — Ten Unindicted Designations (December 14, 2023 through October 24, 2024)

## VI. CONCLUSION AND PRAYER FOR RELIEF

Defendant ADA Willa Cockshutt's Motion to Dismiss should be DENIED in its entirety. Her six arguments fail for the following reasons:

**Absolute immunity:** She misstates Van de Kamp, which protects systemic office-wide Brady policies — not individual, case-specific discovery denials. She has not met her burden under Burns v. Reed to establish that her specific acts were quasi-judicial. Under Buckley v. Fitzsimmons, the acts alleged are investigative and administrative, not prosecutorial.

**Qualified immunity:** Brady has been clearly established since 1963. Plaintiff's written correspondence to Defendant personally — identifying constitutional violations by name and requesting specific remedies — establishes deliberate indifference. Dismissal on qualified immunity grounds is premature. Pearson v. Callahan.

**Personal involvement:** Section III of this Response identifies five specific, documented acts and omissions by ADA Cockshutt personally, each causally connected to Plaintiff's constitutional deprivations. The personal involvement requirement is satisfied.

**Fourth Amendment:** Plaintiff does not advance a Fourth Amendment seizure claim against Defendant personally. Her argument on this ground is a strawman.

**Parratt/Hudson:** Defendant's own Motion admits the seizures were pursuant to 'an established departmental practice.' Parratt/Hudson applies only to random and unauthorized deprivations. Zinermon v. Burch, 494 U.S. 113 (1990), requires pre-deprivation process when deprivations follow established procedure. Texas conversion tort is not an adequate remedy for destroyed property.

**Civil conspiracy:** Circumstantial evidence of concerted action suffices. Hobbs v. Hawkins. Defendant possessed the video proving her co-defendants' unlawful conduct, received written notice, and took no action — supporting the inference of coordinated effort to perpetuate the deprivation.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. DENY ADA Willa Cockshutt's Motion to Dismiss (Dkt. 9) in its entirety;

2. FIND that Defendant's 12(b)(1) challenge is waived for failure to brief it;

3. FIND that Defendant has not met her burden of establishing absolute prosecutorial immunity with respect to the investigative and administrative acts specifically alleged herein;

4. FIND that Parratt/Hudson is inapplicable because the deprivation occurred pursuant to an established departmental practice, requiring pre-deprivation process under Zinermon v. Burch;

5. FIND that Plaintiff has stated cognizable § 1983 claims for Brady violations, Fourteenth Amendment due process deprivation, deliberate indifference, and civil conspiracy against Defendant Cockshutt individually;

6. ORDER that this matter proceed to discovery; and

7. GRANT such other and further relief as this Court deems just and proper.

Respectfully submitted,

_James Sailors_
_____

James Michael Sailors, Pro Se

1300 w 24th st b-109

Austin, Texas 78705

Tel: 512-200-1215

james.sailors22@gmail.com

Date: 6/17/2026

## CERTIFICATE OF SERVICE

I certify that on the date signed below, a true and correct copy of the foregoing Response was served upon Defendant's counsel of record — Elaine Casas and Susana Naranjo-Padron, Travis County Attorney's Office, P.O. Box 1748, Austin, Texas 78767 — via certified mail and/or the Court's CM/ECF system.

Date: 06/17/2026
_____

*James Sailors*
_____

James Michael Sailors

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JAMES MICHAEL SAILORS,

   Plaintiff,

v.                                    Civil Action No. 1:26-CV-00165-DAE

OFFICER JENNINGS, et al.,

   Defendants.

_____

**PLAINTIFF'S EXHIBIT INDEX IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT COCKSHUTT'S MOTION TO DISMISS (DKT. 9)**

     Plaintiff James Michael Sailors respectfully submits the following index of exhibits in support of his Response in Opposition to Defendant ADA Willa Cockshutt's Motion to Dismiss (Dkt. 9). All exhibits are attached as separate PDF attachments to this filing, with the exception of Exhibit E, which is submitted manually to the Clerk's Office on flash drive pursuant to the Notice of Manual Filing filed contemporaneously herewith.

    **Ex. A:** Title Transfer Receipt -- Mazda CX-5, VIN# JM3KFBBM3N0595282 (September 11, 2023)

    **Ex. B:** 311 Police Report Filed by Plaintiff (September 22, 2023)

    **Ex. B1:** Threatening Text Messages from Prior Owner (Extortion Evidence)

    **Ex. C:** APD Auto Theft Email -- 'I am not finding a stolen vehicle report in our system' (November 8, 2023)

    **Ex. D:** Demand for Remedy to APD Auto Theft (November 13, 2023)

    **Ex. E:** Axon Body Camera Recording -- Sergeant Lomovstev and Officer Ogle at Scene of Mercedes AMG GT 63 S Seizure -- Produced by ADA Cockshutt in Criminal Discovery.  **

MANUALLY FILED WITH CLERK'S OFFICE ON FLASH DRIVE -- file size exceeds CM/ECF upload limit. See Notice of Manual Filing filed contemporaneously. **

**Ex. F:**  APD General Offense Report, GO# 2023-2920641 (Redacted, July 23, 2024)

**Ex. G:**  APD Memorandum -- Suspension of Officer Julian Ogle #7787, IA Control No. 2019-0530 (January 17, 2020)

**Ex. H:**  Office of Police Oversight (OPO) Intake Correspondence (December 4-5, 2023)

**Ex. I:**  Arrest Record -- Case D-1-DC-23-209817

**Ex. J:**  Texas DMV Complaint File, Case No. 24-0004268 -- Investigator Billy Curry Confirmation of Horizon Bank Title Transfer (February 2, 2024)

**Ex. K:**  Correspondence -- Plaintiff's Discovery Requests and ADA Cockshutt's Denials

**Ex. L:**  Email Correspondence to ADA Cockshutt -- August 10 and 20, 2025 -- Identification of False Name Used at Scene, Ogle's Presence, Brady Violations, and Known Officer Misconduct

**Ex. M:**  Discovery Drive Correspondence and Brady Material Documentation

**Ex. N:**  Lomovstev Indictment, Travis County Case D1DC21900126 (February 13, 2022)

**Ex. O:**  Plaintiff's More Definite Statement (on file with the Court)

**Ex. P:**  Photograph Evidence -- Officer Ogle Under False Name at Scene

**Ex. Q:**  TxDMV NPR Records -- Plaintiff as Registered Owner

**Ex. R:**  RE: Stolen Mazda Email Chain -- Detective Jennings / Plaintiff Correspondence, November 29, 2023 through January 23, 2024 (includes five title document attachments transmitted November 29, 2023)

**Ex. S:**  Austin Municipal Court Case No. AMC00681634 -- Chapter 47 Property Hearing Request and Scheduling Correspondence (August 14, 2025 through December 22, 2025)

**Ex. T:**  460th District Court Case Summary -- Case No. D-1-DC-23-209819 -- Unauthorized Use of Motor Vehicle Charge -- DA REJECTION/NO CHARGES FILED October 25, 2024 -- Ten Unindicted Designations (December 14, 2023 through October 24, 2024)

Respectfully submitted,

/s/ James Michael Sailors

James Michael Sailors, Pro Se

Austin, Texas 78705

Tel: 512-848-3289

james.sailors22@gmail.com

Date: June 18, 2026