IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JAMES MICHAEL SAILORS,

      Plaintiff,

          v.

OFC. KYLE JENNINGS #7076,

SGT. ALEXANDER LOMOVSTEV #6317,

OFC. JULIAN OGLE #7787,

OFC. VINCENT NGUYEN #9583,

OFC. JOE AGUILAR #8267,

OFC. JONATHAN BYNUM #5611,

ADA WILLA COCKSHUTT,

Defendants.

Civil Action No. 1:26-CV-00165-DAE

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OFFICERS'

MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DKT. 17)

TO THE HONORABLE DAVID A. EZRA, UNITED STATES DISTRICT JUDGE:

Plaintiff James Michael Sailors, proceeding pro se, files this Response in Opposition to Defendant Officers' Motion to Dismiss (Dkt. 17, filed June 29, 2026). Defendants Kyle Jennings, Alexander Lomovstev, Julian Ogle, Vincent Nguyen, Joe Aguilar, and Jonathan Bynum (collectively, the "Officers") advance five grounds for dismissal: (1) the Mazda-related claims are time-barred; (2) the Fourth Amendment claims rest on impermissible group pleading; (3) the procedural due process claim is foreclosed by Parratt/Hudson; (4) the civil conspiracy claim fails under 42 U.S.C. § 1985(3); and (5) the failure-to-intervene claim is inadequately pleaded. They

also assert qualified immunity as a global defense. Each ground fails. Three fail on the face of the Officers' own Motion — including a frontal attack on a statute Plaintiff has not invoked. Two fail when the Court applies the correct legal standard. The Motion should be denied in its entirety.

## I.  INTRODUCTION

The Officers' Motion attacks Plaintiff's Complaint as "group pleaded" and "conclusory." The Motion's central premise is that Plaintiff has not identified, officer by officer, what each Defendant did. That premise is demonstrably false on the Officers' own records. The Austin Police Department's own General Offense Report — GO# 2023-2920641, produced by the Travis County District Attorney's Office in criminal discovery — identifies each Officer by name, badge number, and role, and contains the sworn narrative of Defendant Bynum stating, in his own words: "I placed extended holds on both vehicles for Det Jennings and Det Ogle." (Ex. F, GO# 2023-2920641, p. 29.) Detective Jennings's own email correspondence concerning the Mazda — on which he copied Sergeant Lomovstev beginning November 29, 2023 — documents both officers' joint involvement in the Mazda hold from the outset, twenty-seven days before the vehicle was physically seized. (Ex. R.) The Officers' own body-camera video — produced by ADA Cockshutt in criminal discovery — depicts Sergeant Lomovstev and Officer Ogle at the scene of the Mercedes seizure. (Ex. E.) The Texas Department of Motor Vehicles, through Investigator Billy Curry, confirmed in writing the extrajudicial reassignment of the Mercedes title to a private third party (Horizon Bank) without any Chapter 59 forfeiture proceeding. (Ex. J.) The Complaint, read in light of these records that the Officers themselves produced, identifies what each Officer did, when he did it, and the role he played in the deprivations alleged.

Defendants' remaining grounds are no better. They devote two pages to attacking a 42 U.S.C. § 1985(3) racial-animus conspiracy claim Plaintiff has not pleaded; Plaintiff's conspiracy claim arises under 42 U.S.C. § 1983, for which racial animus is not an element. Their Parratt/Hudson argument ignores Zinermon v. Burch, 494 U.S. 113 (1990), which removes

deliberate, targeted, anticipated deprivations from the doctrine — and the documented Chapter 47 record (Austin Municipal Court Case No. AMC00681634; Ex. S) proves Texas's post-deprivation remedy was rendered a nullity by the prior extrajudicial title transfer (Ex. J). Their qualified-immunity argument never cites Tolan v. Cotton, 572 U.S. 650 (2014), the controlling Supreme Court authority forbidding courts from resolving disputed facts in the movant's favor when deciding qualified immunity. Their time-bar argument ignores that the Mercedes claims are facially within the limitations period; that the post-seizure Mazda deprivations — the extrajudicial release and destruction of the vehicle in early 2024 — are discrete acts independently within the limitations period; and that the § 1983 conspiracy claim is timely as to every overt act committed within the two-year window.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). A complaint need not contain detailed factual allegations; it must contain sufficient factual matter to state a claim that is plausible on its face. Iqbal, 556 U.S. at 678.

When qualified immunity is asserted on a Rule 12(b)(6) motion, the inquiry is modified only in that the plaintiff must plead facts that, if true, would overcome the defense — not that the plaintiff must prove the case at the pleading stage. Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012). The Supreme Court has held that in resolving qualified immunity, a court may not resolve disputed factual questions in favor of the movant; the record must be viewed in the light most favorable to the non-movant. Tolan v. Cotton, 572 U.S. 650, 655-57 (2014) (per curiam) (vacating a grant of qualified immunity at summary judgment for that error). If that is the rule even at summary judgment, on evidence, it applies with greater force at the pleading stage, where every well-pleaded allegation must be accepted as true. Iqbal, 556 U.S. at 678. Defendants' Motion does not cite Tolan.

Pro se pleadings are held to less stringent standards than those drafted by lawyers and must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Where the Court finds a pro se complaint insufficiently specific, the proper remedy is an order for a more definite statement under Rule 12(e) or leave to amend, not dismissal with prejudice. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998); Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009).

The Court may consider documents incorporated by reference in or central to the Complaint. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004); Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). The General Offense Report, Axon body-camera video, TxDMV records, and related documents identified herein are central to the Complaint and were produced by Defendants or their agents in the underlying state proceedings.

## III.  SPECIFIC FACTUAL ALLEGATIONS BY OFFICER — MORE DEFINITE STATEMENT

To the extent the Officers contend that the Complaint does not identify what each Defendant did, Plaintiff provides the following More Definite Statement, drawing from the Complaint and from documents produced by Defendants and their agents in the underlying state proceedings. Each allegation is tied to a specific exhibit.

### A.  Detective Kyle Jennings #7076 — Mazda CX-5 NCIC Hold and Deliberate Refusal

The Mazda hold originated in a documented act of private extortion, not in any conduct of Plaintiff. Plaintiff completed the lawful purchase and title-transfer application for the Mazda CX-5 on September 11, 2023. (Ex. A.) Days later, the previous owner sent Plaintiff threatening messages stating that he would report the vehicle stolen. (Ex. B1.) Plaintiff proactively filed a 311 police report on September 22, 2023, documenting the threats before any false report was made. (Ex. B.) The previous owner then carried out his threat, and that false theft report is the sole origin of the hold at issue.

On November 8, 2023, the APD Auto Theft Unit confirmed in writing to Plaintiff: "I am not finding a stolen vehicle report in our system" for the Mazda CX-5. (Ex. C, APD Auto Theft Email, Nov. 8, 2023.) Plaintiff transmitted a written demand for remedy to APD Auto Theft on November 13, 2023, seeking removal of any holds and confirmation of his ownership. (Ex. D, Demand for Remedy, Nov. 13, 2023.) Notwithstanding this written confirmation and demand, Detective Jennings caused or maintained an NCIC hold on the Mazda. On November 29, 2023 — twenty-seven (27) days before APD ever physically took possession of the vehicle — Plaintiff personally contacted Detective Jennings by email, copied Sergeant Lomovstev, copied the Travis County Public Integrity Command unit at PICC@traviscountytx.gov, and transmitted to Jennings five attachments evidencing Plaintiff's documented ownership of the Mazda (title transfer receipt, 311 police report, and related documents). (Ex. R, Jennings/Sailors Email Chain, Nov. 29, 2023; Ex. A, Title Transfer Receipt; Ex. B, 311 Police Report.) Despite this proof — provided to him in advance of any physical seizure — Detective Jennings refused to remove the NCIC hold. He acted in coordination with Sergeant Lomovstev, whom he copied on his email correspondence, and his refusal was a deliberate, targeted, individual decision made with actual notice of Plaintiff's documented ownership. These facts are pleaded with reference to Defendants' own records.

On December 26, 2023 — while Plaintiff was detained and unable to protect his property — APD physically seized the Mazda pursuant to the hold Detective Jennings had refused to remove. (Ex. F.) On or about February 1, 2024, the vehicle was released — without court order, without notice to Plaintiff, and without any proceeding — to the same previous owner who had made the false theft report. That individual scrapped the vehicle and collected an insurance payment. The State thus seized a documented owner's vehicle on the strength of a theft report its own Auto Theft Unit could not find in its system (Ex. C), and delivered it to the false reporter for destruction. Notably, no criminal charge of any kind concerning the Mazda was ever filed against Plaintiff — not theft, not unauthorized use, nothing. The vehicle was held, seized,

released, and destroyed without the State ever so much as alleging that Plaintiff committed an offense involving it.

### B. Sergeant Alexander Lomovstev #6317 — Coordinator of Both Seizures; Forcible Taking of Mercedes

Sergeant Lomovstev served as the coordinating officer for the seizures of both vehicles. He was copied on Detective Jennings's communications regarding the Mazda from November 29, 2023 forward. (Ex. R.) The two seizures are connected by Defendants' own conduct. In the days preceding January 25, 2024, Detective Jennings told Plaintiff that he could recover the Mazda by appearing at APD headquarters at 1520 Rutherford Lane to sign paperwork and provide a statement. (Ex. R, Jennings/Sailors Email Chain, Jan. 17-23, 2024.) When Plaintiff appeared on January 25, 2024, Detective Jennings was not present; Sergeant Lomovstev conducted the encounter instead — and rather than returning the Mazda, seized the Mercedes. Plaintiff came to recover one vehicle and left having lost the other. On that date, Sergeant Lomovstev forcibly took possession of Plaintiff's Mercedes AMG GT 63 S (VIN W1K2J5KB7LA075512) under display of authority and threat of arrest. Sergeant Lomovstev's conduct at the scene is depicted on the Axon body-camera recording produced by ADA Cockshutt in criminal discovery; on that recording, Sergeant Lomovstev acknowledged Plaintiff's registered ownership of the vehicle. (Ex. E.) Sergeant Lomovstev was, at the time of the seizure, the subject of a prior felony indictment in Travis County Cause No. D1DC21900126 (February 13, 2022). (Ex. N.) The seizure was conducted without any forfeiture petition under Texas Code of Criminal Procedure art. 59.04, without notice to Plaintiff, and without a judicial order. (Ex. J, TxDMV Confirmation of Title Reassignment to Horizon Bank, Feb. 2, 2024.) The December 14, 2023 traffic stop precipitated by the false stolen-vehicle flag on the Mercedes generated two criminal cases against Plaintiff: Travis County Case No. D-1-DC-23-209817 (Ex. I), which was subsequently dismissed, and Case No. D-1-DC-23-209819, the UUMV charge, which the District Attorney's Office rejected on October 25, 2024 with "DA REJECTION/NO

CHARGES FILED" after ten unindicted designations. (Ex. T.) Every criminal charge arising from the Mercedes events was ultimately dismissed or rejected.

### C.  Officer Julian Ogle #7787 — Witness to Forcible Mercedes Seizure; Failure to Intervene

Officer Ogle was present at the scene of the January 25, 2024 Mercedes seizure and is identifiable on the Axon body-camera recording referenced above. (Ex. E.) Officer Ogle observed Sergeant Lomovstev's forcible taking of Plaintiff's vehicle and did not intervene. Officer Ogle was, at the time of these events, the subject of a documented APD Internal Affairs suspension (Control No. 2019-0530, ten-day suspension imposed January 17, 2020) for threatening a sitting state-court judge. (Ex. G.) Officer Ogle is identified by name in the APD General Offense Report as a participating officer. (Ex. F, GO# 2023-2920641.) Plaintiff personally communicated with ADA Cockshutt on August 10, 2025 identifying Officer Ogle's presence at the scene under a false name. (Ex. L; Ex. P.)

### D.  Officer Jonathan Bynum #5611 — Documented Admission to Placing the Holds

Defendant Bynum's role is not pleaded by inference. It is established by his own sworn narrative in the APD General Offense Report. At page 29 of the report (produced by ADA Cockshutt in criminal discovery), Officer Bynum wrote, in his own words: "I placed extended holds on both vehicles for Det Jennings and Det Ogle." (Ex. F, GO# 2023-2920641, p. 29.) This single sentence establishes: (a) Officer Bynum's individual act; (b) coordination with Detective Jennings and Detective Ogle; (c) the existence of the holds; and (d) Officer Bynum's knowledge of and participation in the deprivation. The Officers' assertion that Plaintiff has not pleaded individualized conduct as to Officer Bynum is refuted, in their own document, in their own words.

### E.  Officer Joe Aguilar #8267 — Coordination with Private Third Party in Mercedes Transfer

Officer Aguilar is identified in the APD General Offense Report as a participating officer in the events surrounding the Mercedes seizure. (Ex. F, GO# 2023-2920641.) The Complaint alleges that Officer Aguilar, in coordination with Sergeant Lomovstev, facilitated

communications between Horizon Bank (a private third party) and APD personnel that resulted in the extrajudicial transfer of the Mercedes title to Horizon Bank without any forfeiture petition, notice, or judicial review. The fact of the transfer is independently confirmed by the TxDMV's February 2, 2024 written correspondence stating: "the title has been reassigned to Horizon Bank." (Ex. J.)

## F.  Officer Vincent Nguyen #9583 — Limited Specific Allegations; Leave to Amend Requested

Plaintiff acknowledges that the original Complaint's specific factual allegations as to Officer Nguyen are more limited than those concerning the other Defendants. Officer Nguyen is identified in the APD records as a participating officer, and Plaintiff's investigation of Officer Nguyen's specific role is ongoing. To the extent the Court finds the Complaint's allegations as to Officer Nguyen insufficiently specific, the proper remedy under Fifth Circuit law is leave to amend, not dismissal with prejudice. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998); Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009). Plaintiff requests leave to amend as to Officer Nguyen if the Court deems the present allegations insufficient.

## IV.  ARGUMENT

### A.  Defendants' Time-Bar Argument Fails as to All Claims

Defendants argue (Dkt. 17 at 2) that the Mazda-related claims are time-barred because Plaintiff alleges the Mazda was physically seized on December 26, 2023, and the Complaint was filed on January 22, 2026. The argument fails for four independent reasons. It also has no application to the Mercedes claims or to the conspiracy claim, which Defendants do not separately address.

### 1.  The Mercedes Claims Are Facially Timely.

Plaintiff alleges the Mercedes was seized on January 25, 2024. The two-year Texas limitations period for personal injury actions applicable to § 1983 claims, see Tex. Civ. Prac. & Rem. Code § 16.003; Owens v. Okure, 488 U.S. 235, 249-50 (1989), expired on January 25, 2026. The Complaint was filed on January 22, 2026 — three days within the limitations window.

Defendants' Motion does not address the Mercedes claims. They are facially timely and must proceed.

### 2. The Mazda Claims Are Timely: The Post-Seizure Deprivations Are Discrete Acts Within the Limitations Period.

Even treating each act as discrete, the Mazda claims are timely. The December 26, 2023 physical seizure was not the last — or the gravest — deprivation Defendants inflicted with respect to the Mazda. In late January and early February 2024, Defendants caused the extrajudicial release of the Mazda to a private third party without any forfeiture proceeding, notice, or judicial order, and the vehicle was thereafter destroyed. Each of those post-seizure acts — the release without process and the resulting destruction — is a discrete, independently actionable deprivation of Plaintiff's property, and each occurred well within two years of the January 22, 2026 filing. Under federal accrual rules, each discrete unconstitutional act triggers its own limitations period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-14 (2002); Wallace v. Kato, 549 U.S. 384, 388 (2007) (federal law governs accrual of § 1983 claims). Defendants' own theory of discrete-act accrual therefore saves the core of the Mazda claims.

Independently, even as to the initial seizure, accrual is not the simple matter Defendants assume. A § 1983 claim accrues when the plaintiff has a complete and present cause of action and knows or has reason to know of the injury forming its basis. Wallace, 549 U.S. at 388, 391. Plaintiff was detained when the Mazda was physically seized on December 26, 2023, and — critically — Detective Jennings thereafter represented to Plaintiff, into late January 2024, that Plaintiff could recover the Mazda by appearing at APD headquarters. (Ex. R, Jennings/Sailors Email Chain, Jan. 17-23, 2024.) A plaintiff told by the seizing officer himself that his property will be returned has neither reason to know the deprivation is permanent nor a complete cause of action for its loss. Those representations bear directly on accrual and on equitable tolling — quintessential fact questions.

### 3. The Civil Conspiracy Claim Is Timely Under Any Accrual Rule.

The § 1983 conspiracy claim is timely under either of the accrual approaches recognized in this Circuit. See Helton v. Clements, 832 F.2d 332, 334-35 (5th Cir. 1987); Rodriguez v. Holmes, 963 F.2d 799, 803-04 (5th Cir. 1992). If the limitations period runs from the final overt act in furtherance of the conspiracy, the claim is timely: the last overt acts — the January 25, 2024 forcible Mercedes seizure and the subsequent extrajudicial title transfer confirmed February 2, 2024 (Ex. J) — occurred well within two years of the January 22, 2026 filing. If instead each overt act causing injury carries its own limitations period, the claim is equally timely as to those acts, each of which independently injured Plaintiff within the limitations window. And under either approach, the earlier Mazda-related overt acts remain properly pleaded and provable as evidence of the agreement itself, whose formation and scope are questions of fact not resolvable on a Rule 12(b)(6) motion.

**4. Accrual and Tolling Are Fact-Intensive and Cannot Be Resolved on the Pleadings.**

Even if any portion of the Mazda claim were subject to a limitations question, the questions of accrual, the application of the discovery rule, and equitable tolling are fact-intensive inquiries inappropriate for resolution under Rule 12(b)(6). See Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003). Plaintiff has pleaded facts demonstrating that he repeatedly and diligently pursued the return of his property — by formal demand to the City of Austin, by complaints to the APD Public Integrity Command unit and the Austin Police Oversight Office (Ex. H, OPO Intake Correspondence, Dec. 4-5, 2023), by TxDMV complaint (Case No. 24-0004268, Ex. J), and by Chapter 47 property hearing (Austin Municipal Court Case No. AMC00681634, Ex. S) — and that those efforts were repeatedly impeded by Defendants' continuing conduct and by Plaintiff's intermittent detention. Limitations is an affirmative defense, and dismissal on its basis is appropriate only where the bar appears on the face of the Complaint without need for further factual development. Jones, 339 F.3d at 366. That standard is not met here.

**B. Defendants' Group-Pleading Attack Fails — Each Officer's Individual Role Is Identified in the Complaint and in Defendants' Own Records**

Defendants argue that the Complaint engages in impermissible group pleading and fails to identify what each Defendant individually did. (Dkt. 17 at 5-7.) The premise is refuted by Defendants' own records. As detailed in Section III above:

Defendant Jennings is identified, by name and badge, as the detective who maintained the NCIC hold on the Mazda after receiving proof of ownership; the evidence is his own email correspondence. (Ex. R.) Defendant Lomovstev is identified as the coordinator of both seizures; the evidence is his own appearance on the Axon body-camera recording. (Ex. E.) Defendant Bynum is identified, in his own narrative within Defendants' own offense report, as the officer who placed the extended holds on both vehicles "for Det Jennings and Det Ogle." (Ex. F at 29.) Defendant Ogle is identified as the officer who witnessed the forcible Mercedes seizure and failed to intervene; the evidence is the same body-camera recording. (Ex. E.) Defendant Aguilar is identified as a participating officer in the events surrounding the Mercedes seizure; the evidence is the offense report and the TxDMV confirmation of extrajudicial title transfer. (Ex. F; Ex. J.)

Iqbal does not require a plaintiff to plead facts beyond his knowledge; it requires plausible factual content. Iqbal, 556 U.S. at 678. Plaintiff has pleaded each Officer's role with reference to documents the Officers themselves produced. Defendants cannot fairly contend the Complaint is conclusory while their own offense report identifies each of them by name, badge, and act. Every group-pleading authority Defendants cite — Ristow, Bosarge, Meadours, Linicomn, Armstrong, and Tuttle — involved complaints that contained no defendant-specific factual content at all. None involved, as here, a record in which the defendants' own offense report, own body-camera video, and own email correspondence identify each defendant's individual act. Those authorities are inapposite by their own terms.

To the extent any individual allegation is found insufficiently particularized, the proper remedy is an order for a more definite statement under Rule 12(e) or leave to amend, not dismissal with prejudice. Bazrowx, 136 F.3d at 1054.

**C.  The Procedural Due Process Claim Is Not Foreclosed by Parratt/Hudson —
Zinermon Controls, and the Chapter 47 Record Proves Texas's Remedy Was a Nullity**

Defendants invoke Parratt/Hudson and argue that the Texas tort of conversion constitutes an adequate post-deprivation remedy that bars Plaintiff's procedural due process claim. (Dkt. 17 at 7-9.) Defendants' argument fails for three reasons grounded in controlling Supreme Court authority and in the documented record.

**1.  Parratt/Hudson Does Not Apply: The Deprivation Was Deliberate, Targeted, and Anticipated.**

Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v. Palmer, 468 U.S. 517 (1984), apply only to deprivations that are "random and unauthorized" — deprivations the State could not have anticipated and for which it was impractical to provide pre-deprivation process. The Supreme Court in Zinermon v. Burch, 494 U.S. 113, 136-38 (1990), expressly distinguished and limited Parratt/Hudson, holding that the doctrine does not apply where (a) the deprivation is predictable or anticipated, (b) pre-deprivation process was practicable, and (c) the conduct is not "random and unauthorized" but is instead the result of an established procedure or a deliberate, targeted act.

Detective Jennings's refusal to remove the NCIC hold was not random or unauthorized. It occurred after Plaintiff personally provided him with five title-related attachments and personally informed him that the vehicle was not stolen — twenty-seven days before APD ever physically took possession. (Ex. R.) At that moment, the State, acting through Jennings, had specific notice that a documented owner was asserting his rights. Pre-deprivation process — the simple administrative act of canceling the NCIC entry — was not merely practicable; it was the obvious step a constitutionally adequate procedure would require. The Supreme Court has held since Fuentes v. Shevin, 407 U.S. 67, 80-84 (1972), that absent extraordinary circumstances the State must afford notice and an opportunity to be heard before taking a person's property. Jennings's deliberate refusal, with proof in hand, is precisely the targeted, anticipated deprivation Zinermon places outside Parratt/Hudson.

The Mercedes deprivation is even further removed from "random and unauthorized" conduct. Sergeant Lomovstev's forcible taking on January 25, 2024 was conducted in coordination with Officers Ogle, Aguilar, and Bynum, documented in the offense report, captured on body-camera video, and culminated in the extrajudicial reassignment of title to a private third party without any forfeiture petition under Texas Code of Criminal Procedure art. 59.04. (Ex. E; Ex. F; Ex. J.) These are not the acts of a rogue officer acting outside the State's control; they are the coordinated conduct of multiple officers acting under color of state law.

**2. The Chapter 47 Record Proves Texas's Post-Deprivation Remedy Was a Nullity.**

Plaintiff invoked Texas's statutory post-deprivation remedy. He filed a Chapter 47 property hearing claim with the Austin Municipal Court on August 14, 2025. The court docketed the matter as Case No. AMC00681634, issued two Notices to Appear, and ultimately conducted a hearing on February 18, 2026. The hearing was fruitless. By the time it occurred, APD had caused the title to the Mercedes to be reassigned to Horizon Bank — a transfer confirmed by TxDMV on February 2, 2024, more than eighteen months before the Chapter 47 claim was even filed. (Ex. S; Ex. J.) Plaintiff respectfully requests the Court take judicial notice of Austin Municipal Court Case No. AMC00681634 under Federal Rule of Evidence 201.

Texas law, moreover, commanded the opposite of what Defendants did. Where ownership of property alleged to have been stolen is contested or disputed, the officer in custody of it "shall hold it subject to the order of the proper court." Tex. Code Crim. Proc. art. 47.01(a). Plaintiff's ownership was indisputably contested — that contest was the stated basis for the holds. The statute therefore obligated the Officers to hold both vehicles for a judicial determination. They instead released the Mazda to the false reporter and transferred the Mercedes title to Horizon Bank with no court order of any kind — in direct violation of the very statutory scheme whose remedial adequacy they now invoke. A "remedy" that has been rendered a nullity by the wrongdoer's prior extrajudicial action is not an adequate post-deprivation remedy within the meaning of Hudson, 468 U.S. at 534. The remedy must be "meaningful," id., and

meaningfulness is judged by whether the remedy can in fact restore the deprived property or its equivalent. A Chapter 47 court cannot reach property that the State's own officers have already transferred to a third party without process. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (adequacy assessed with reference to the risk of erroneous deprivation and the value of additional safeguards). Defendants cannot simultaneously deprive Plaintiff of property outside any judicial process, transfer it to a third party before any state remedy can issue, and then invoke that very remedy's "adequacy" as a defense.

### 3.  The Texas Conversion Tort Is Not an Adequate Remedy for Property Transferred and Destroyed.

Defendants' reliance on Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994), is misplaced. Murphy involved property that was damaged but recoverable. Here, the Mazda was transferred to a third party and destroyed; the Mercedes title was reassigned to Horizon Bank without forfeiture proceedings. A conversion action against a third-party transferee who no longer holds destroyed property is not, as a practical matter, a meaningful post-deprivation remedy. The inadequacy is not theoretical — it was proven in fact when every state and administrative remedy Plaintiff pursued produced no restoration of his property.

### D.  Defendants Attack a Statute Plaintiff Has Not Invoked: Plaintiff's Conspiracy Claim Arises Under 42 U.S.C. § 1983, Not 42 U.S.C. § 1985(3)

Defendants devote two pages of their Motion (Dkt. 17 at 10-11) to attacking a "§ 1985(3) conspiracy" claim, arguing principally that Plaintiff has not pleaded racial animus. Plaintiff has not pleaded a § 1985(3) claim. The Complaint's conspiracy theory arises under 42 U.S.C. § 1983, for which racial animus is not an element. Section IV.C of Defendants' Motion is therefore directed at a claim Plaintiff has not asserted.

The elements of a § 1983 civil conspiracy in the Fifth Circuit are: (1) an agreement between two or more state actors, or between state actors and private parties acting under color of state law; (2) to deprive the plaintiff of a federally protected right; and (3) an overt act in furtherance of the agreement that results in the deprivation. Cinel v. Connick, 15 F.3d 1338,

1343 (5th Cir. 1994); Hobbs v. Hawkins, 968 F.2d 471, 475 (5th Cir. 1992); Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990), abrogated on other grounds by Martin v. Thomas, 973 F.2d 449 (5th Cir. 1992). Racial animus is not required. A § 1983 conspiracy may be pleaded with circumstantial evidence of agreement; direct proof is rarely available because the agreement itself is concealed by the conspirators. Hobbs, 968 F.2d at 480.

Plaintiff has pleaded each element. The agreement is shown by the coordinated conduct of multiple officers across two vehicle seizures: Jennings copying Lomovstev on the Mazda communications and refusing to remove the hold (Ex. R); Bynum placing extended holds "for Det Jennings and Det Ogle" (Ex. F at 29); Jennings inviting Plaintiff to APD headquarters under the representation that he could recover the Mazda, where Lomovstev — not Jennings — conducted the encounter and seized the Mercedes instead (Ex. R; Ex. E); Lomovstev, Ogle, and other officers executing that forcible Mercedes seizure (Ex. E); and Aguilar and Lomovstev coordinating with Horizon Bank for the extrajudicial title transfer that was independently confirmed by TxDMV (Ex. J). The deprivation of federally protected rights is the Fourth and Fourteenth Amendment violations alleged. The overt acts include each seizure, each refusal to remove the hold, each communication with Horizon Bank, and the extrajudicial title transfer.

Nor would any intracorporate-conspiracy theory assist Defendants. The conspiracy alleged spans employees of the City of Austin (the Officer Defendants), a prosecutor employed by Travis County (Defendant Cockshutt) — two governmental entities that Defendant Cockshutt's own briefing insists are "separate entities" (Dkt. 13 ¶ 5) — and coordination with a private actor, Horizon Bank. An agreement among actors from separate entities is not the conduct of a single corporate principal.

The direct evidence of the meeting of the minds — the internal communications between Defendants regarding Plaintiff's vehicles — is in Defendants' exclusive possession and cannot be obtained without discovery. The Supreme Court in Twombly recognized that conspiracy plaintiffs may face such informational asymmetry, and the Fifth Circuit accepts circumstantial

pleading of agreement. Hobbs, 968 F.2d at 480. Dismissal at the pleading stage — before Plaintiff has any opportunity to obtain the communications that would prove the agreement directly — is inappropriate.

**E.  The Failure-to-Intervene Claim Is Adequately Pleaded as to Officer Ogle and Other Officers Present at the Forcible Mercedes Seizure**

A § 1983 bystander-liability claim requires plausible allegations that the officer was present and (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013); Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). An officer's duty to intervene when a fellow officer violates a citizen's constitutional rights in his presence has been clearly established in this Circuit since at least 1995. See Hale, 45 F.3d at 919.

Officer Ogle was physically present at the January 25, 2024 forcible Mercedes seizure. (Ex. E.) He observed Sergeant Lomovstev — a supervisor and an officer then subject to a prior felony indictment, Ex. N — forcibly take Plaintiff's vehicle under display of authority and threat of arrest, in the absence of any warrant, probable cause, or pre-deprivation process. Officer Ogle had a reasonable opportunity to intervene by, at minimum, requesting that the seizure not proceed pending verification of ownership (which would have been promptly confirmed by reference to NPR records, Ex. Q). He did not. The Axon recording confirms his presence and inaction.

Defendants' argument that the Complaint does not identify which officer observed which seizure is, again, refuted by their own video. The Axon recording — which the Officers' employer produced in criminal discovery — places Officer Ogle at the scene. Nor is Officer Ogle a mere bystander: Officer Bynum's narrative states that the extended holds on both vehicles were placed "for Det Jennings and Det Ogle" (Ex. F at 29), making Ogle a direct participant in the underlying deprivations independent of any bystander-liability theory. To the extent the

Court requires further specificity as to other officers' presence, leave to amend is the appropriate remedy.

## F. Qualified Immunity Does Not Warrant Dismissal at the Pleading Stage on the Facts Pleaded and Documented Here

Defendants invoke qualified immunity as a global defense. The defense fails at this stage for three reasons.

### 1. The Court Must View the Facts in the Light Most Favorable to Plaintiff — Tolan v. Cotton.

In resolving qualified immunity, a court may not resolve disputed factual questions in the movant's favor; the record must be viewed in the light most favorable to the non-movant. Tolan v. Cotton, 572 U.S. 650, 655-57 (2014) (per curiam) (vacating a grant of qualified immunity at summary judgment because the lower courts credited the officer's version of disputed facts). If courts may not weigh facts against the non-movant even at summary judgment, on a developed evidentiary record, they plainly may not do so at the pleading stage, where every well-pleaded allegation must be accepted as true. Iqbal, 556 U.S. at 678; Backe, 691 F.3d at 648. Defendants' Motion does not cite Tolan. Their entire qualified-immunity argument is constructed by characterizing Plaintiff's allegations in the light least favorable to him and then attacking those characterizations. That is the precise error Tolan forbids.

### 2. The Rights at Issue Were Clearly Established in 2023–2024.

Plaintiff need not produce a case with "fundamentally similar" facts to defeat qualified immunity. Hope v. Pelzer, 536 U.S. 730, 741 (2002). It is enough that the state of the law at the time gave the officers "fair warning" that their conduct was unconstitutional. Id.

The relevant rights were clearly established well before December 2023:
• A vehicle is "effects" within the Fourth Amendment, and its warrantless seizure absent probable cause or a recognized exception violates the Fourth Amendment. United States v. Place, 462 U.S. 696, 700-01 (1983); Soldal v. Cook County, 506 U.S. 56, 61-68 (1992) (Fourth Amendment protects against non-investigatory seizures of property). A seizure of property

occurs upon any "meaningful interference with an individual's possessory interests in that property" — a definition that reaches the maintenance of the holds themselves, not merely the physical takings. United States v. Jacobsen, 466 U.S. 109, 113 (1984). • Deprivation of property without notice and a meaningful pre-deprivation hearing, where pre-deprivation process is practicable, violates procedural due process. Zinermon, 494 U.S. at 136-38; Mathews v. Eldridge, 424 U.S. 319, 335 (1976). • A police officer present at a fellow officer's constitutional violation has a duty to intervene where he has a reasonable opportunity to do so. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995); Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). • State actors who conspire to deprive a person of federal rights are liable under § 1983. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

No reasonable officer in 2023–2024 could have believed it was lawful to maintain an NCIC hold on a vehicle after receiving documentary proof of ownership; to forcibly seize a vehicle under threat of arrest without a warrant, probable cause, or any recognized exception; or to facilitate the extrajudicial transfer of a vehicle's title to a private third party without any forfeiture proceeding under Tex. Code Crim. Proc. art. 59.04.

### 3. Qualified Immunity Cannot Be Resolved Where Material Facts Are Drawn from Defendants' Own Records.

At the pleading stage, the question is whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). Plaintiff's pleadings do exactly that — and the facts asserted are not conjecture; they are drawn from Defendants' own documents: the offense report (Ex. F), the body-camera video (Ex. E), the Auto Theft email (Ex. C), the Jennings email chain (Ex. R), and the TxDMV records (Ex. J). If proven — as the exhibits themselves indicate they will be — these facts establish that each Officer violated clearly established Fourth and Fourteenth Amendment rights. Under Backe, that is sufficient to defeat qualified immunity at this stage; the defense may be re-urged, if at all, on a developed record.

**G.  Any Pleading Insufficiency Warrants Leave to Amend, Not Dismissal with Prejudice**

The Fifth Circuit has repeatedly held that where a pro se complaint is potentially deficient, the proper remedy is an order for a more definite statement under Rule 12(e) or leave to amend, not dismissal with prejudice. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998); Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend should be freely granted).

To the extent the Court identifies any particular allegation as insufficiently specific, Plaintiff requests leave to amend rather than dismissal.

**V.  EXHIBITS IN SUPPORT OF THIS RESPONSE**

All exhibits identified below were previously filed with Plaintiff's Response in Opposition to Defendant Cockshutt's Motion to Dismiss at Dkt. 10 and its attachments, and are incorporated by reference herein. Exhibit lettering matches the exhibit lettering used in Plaintiff's Dkt. 10 filing; exhibits filed at Dkt. 10 that are not cited in this Response (Exhibits K, M, and O) are intentionally omitted from this list. Exhibit E (the Axon body-camera video) was submitted by manual filing with the Clerk's Office pursuant to Plaintiff's contemporaneously-filed Notice of Manual Filing. Plaintiff does not re-attach the exhibits to this Response to avoid duplicative docket entries; the documents are already before the Court.

**Ex. A:**  Title Transfer Receipt — Mazda CX-5, VIN# JM3KFBBM3N0595282 (Sept. 11, 2023)

**Ex. B:**  311 Police Report Filed by Plaintiff (Sept. 22, 2023)

**Ex. C:**  APD Auto Theft Email — "I am not finding a stolen vehicle report in our system" (Nov. 8, 2023)

**Ex. D:**  Demand for Remedy to APD Auto Theft (Nov. 13, 2023)

**Ex. E:**  Axon Body-Camera Recording — Lomovstev and Ogle at Mercedes Seizure (manually filed)

**Ex. F:**  APD General Offense Report, GO# 2023-2920641 (Redacted, July 23, 2024)

**Ex. G:**  APD Memorandum — Suspension of Officer Julian Ogle #7787, IA Control No. 2019-0530 (Jan. 17, 2020)

**Ex. H:**  OPO Intake Correspondence (Dec. 4–5, 2023)

**Ex. I:**  Arrest Record — Travis County Case No. D-1-DC-23-209817 (subsequently dismissed)

**Ex. J:**  TxDMV Complaint File, Case No. 24-0004268 — Confirmation of Title Reassignment to Horizon Bank (Feb. 2, 2024)

**Ex. L:**  Email Correspondence to ADA Cockshutt — Aug. 10 and 20, 2025

**Ex. N:**  Lomovstev Indictment, Travis County Case D1DC21900126 (Feb. 13, 2022)

**Ex. P:** Photo of Officer Ogle Under False Name Submitted to ADA Cockshutt (Aug. 10, 2025)

**Ex. Q:** TxDMV NPR Records — Plaintiff as Registered Owner

**Ex. R:** Jennings/Sailors Email Chain (Nov. 29, 2023 – Jan. 23, 2024)

**Ex. S:** Austin Municipal Court Case No. AMC00681634 — Chapter 47 Property Hearing

**Ex. T:** Travis County Case Summary D-1-DC-23-209819 — DA REJECTION/NO CHARGES FILED (Oct. 25, 2024)

## VI.  CONCLUSION AND PRAYER FOR RELIEF

The Officers' Motion to Dismiss should be DENIED in its entirety. Their time-bar argument fails on four independent grounds. Their group-pleading argument fails on the face of their own offense report and body-camera recording. Their Parratt/Hudson argument fails under Zinermon and against the documented Chapter 47 record. Their § 1985(3) attack targets a statute Plaintiff has not invoked. Their failure-to-intervene argument is refuted by Officer Ogle's documented presence at the forcible Mercedes seizure. Their qualified-immunity defense ignores Tolan v. Cotton and Hope v. Pelzer and depends on viewing the facts in the light least favorable to Plaintiff.

Plaintiff respectfully requests that the Court (1) DENY the Officers' Motion to Dismiss in its entirety; (2) deem the More Definite Statement set forth in Section III of this Response to be incorporated into the Complaint; (3) to the extent the Court finds any allegation insufficiently specific, grant Plaintiff leave to amend rather than dismiss; (4) take judicial notice under Federal Rule of Evidence 201 of Austin Municipal Court Case No. AMC00681634 and Travis County District Court Case No. D-1-DC-23-209819, both of which are matters of public record; and (5) grant such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ James Michael Sailors
James Michael Sailors, Pro Se
1300 W 24th Street, B109
Austin, Texas 78705
Tel: 512-848-3289
james.sailors22@gmail.com

Date: 07-13-2026

## CERTIFICATE OF SERVICE

I certify that on the date signed above, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system and by electronic mail pursuant to the parties' written consent under Fed. R. Civ. P. 5(b)(2)(E), addressed as follows: Luke McHenry, Luke.McHenry@austintexas.gov, Assistant City Attorney, City of Austin, P.O. Box 1546, Austin, Texas 78767-1546; Elaine Casas, Elaine.Casas@traviscountytx.gov, and Susana Naranjo-Padron, Susana.Naranjo-Padron@traviscountytx.gov, Travis County Attorney's Office, P.O. Box 1748, Austin, Texas 78767.

/s/ James Michael Sailors
James Michael Sailors