**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JAMES MICHAEL SAILORS,

Plaintiff,

v. Civil Action No. 1:26-CV-00165-DAE

OFC. KYLE JENNINGS #7076,

SGT. ALEXANDER LOMOVSTEV #6317,

OFC. JULIAN OGLE #7787,

OFC. JOHN DOE (unidentified APD officer),

OFC. JOE AGUILAR #8267,

OFC. JONATHAN BYNUM #5611,

ADA WILLA COCKSHUTT,

Defendants.

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE DAVID A. EZRA, UNITED STATES DISTRICT JUDGE:

Plaintiff James Michael Sailors, proceeding pro se, files this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and the Court's order granting leave to amend. This First Amended Complaint supersedes Plaintiff's Original Complaint (Dkt. 1) and all attachments thereto in their entirety, and states each claim with the specificity required by Federal Rule of Civil Procedure 8 as construed in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Plaintiff demands a trial by jury on all issues so triable.

## I. PARTIES

**1.** Plaintiff James Michael Sailors is an individual residing in Austin, Texas, and is the registered owner of the two vehicles at issue.

**2.** Defendant Kyle Jennings (#7076) is a Detective with the Austin Police Department, sued in his individual capacity for acts taken under color of state law.

**3.** Defendant Alexander Lomovstev (#6317) is a Sergeant with the Austin Police Department, sued in his individual capacity for acts taken under color of state law.

**4.** Defendant Julian Ogle (#7787) is an Officer/Detective with the Austin Police Department, sued in his individual capacity for acts taken under color of state law.

**5.** Defendant John Doe is an Austin Police Department officer, presently unidentified, who was present at the January 25, 2024 seizure of Plaintiff's Mercedes and is sued in his individual capacity for acts taken under color of state law. Defendant Doe's identity is known to Defendants and is ascertainable from APD records and the Axon body-camera recording (Ex. E); on that recording, Sergeant Lomovstev introduced the later-arriving officers under false names, actively concealing their identities from Plaintiff. Plaintiff will substitute Defendant Doe's true name upon its disclosure in discovery, and any limitations period is equitably tolled by Defendants' concealment of his identity.

**6.** Defendant Joe Aguilar (#8267) is an Officer with the Austin Police Department, sued in his individual capacity for acts taken under color of state law.

**7.** Defendant Jonathan Bynum (#5611) is an Officer with the Austin Police Department, sued in his individual capacity for acts taken under color of state law.

**8.** Defendant Willa Cockshutt is an Assistant District Attorney with the Travis County District Attorney's Office, sued in her individual capacity for acts taken under color of state law.

## II. JURISDICTION AND VENUE

**9.** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights). Plaintiff's claims arise under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

**10.** Venue is proper in the Western District of Texas, Austin Division, under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District, and the Defendants reside and/or perform their official duties in this District.

## III. STATEMENT OF FACTS

### A. The Mazda CX-5 — Acquisition, False Theft Report, and Plaintiff's Notice to APD

**11.** On September 11, 2023, Plaintiff completed the lawful purchase and title-transfer application for a 2022 Mazda CX-5 (VIN# JM3KFBBM3N0595282) from the previous registered owner. The completed title-transfer receipt evidences Plaintiff's ownership. (Ex. A.)

**12.** After the sale, the previous owner sent threatening text messages to Plaintiff stating his intent to file a false theft report. (Ex. B1.) On September 22, 2023, Plaintiff filed a 311 police report with APD documenting the threats and the false-theft risk. (Ex. B.)

**13.** On November 8, 2023, the APD Auto Theft Unit confirmed in writing to Plaintiff: “I am not finding a stolen vehicle report in our system” for the Mazda. (Ex. C.)

**14.** On November 13, 2023, Plaintiff transmitted a written demand to APD Auto Theft seeking removal of any holds and confirmation of his ownership. (Ex. D.)

### B. Detective Jennings's Deliberate Refusal to Remove the NCIC Hold

**15.** On November 29, 2023 — twenty-seven (27) days before APD ever physically took possession of the Mazda — Detective Jennings initiated email correspondence with

Plaintiff regarding the Mazda. Plaintiff responded the same day by transmitting to Detective Jennings five attachments evidencing Plaintiff's documented ownership, including the title-transfer receipt, the 311 report, identification, and related records. (Ex. R.)

**16.** On the same email transmission of November 29, 2023, Detective Jennings copied Sergeant Lomovstev. Plaintiff copied the Travis County Public Integrity Command unit at PICC@traviscountytx.gov on his November 30, 2023 follow-up. (Ex. R.)

**17.** Detective Jennings, possessing actual notice that the registered owner was asserting his rights and that APD's Auto Theft Unit had found no stolen-vehicle report, refused to remove the NCIC hold. His refusal was a deliberate, targeted, individual decision taken with actual knowledge of Plaintiff's ownership.

**C. Officer Bynum's Documented Placement of "Extended Holds" for Jennings and Ogle**

**18.** Officer Jonathan Bynum's own sworn supplemental narrative within the APD General Offense Report states, in his own words: "I placed extended holds on both vehicles for Det Jennings and Det Ogle." (Ex. F, GO# 2023-2920641, p. 29.) This admission establishes Officer Bynum's individual act, his coordination with Detective Jennings and Officer Ogle, and his knowledge of and participation in the maintenance of the holds on both vehicles.

**D. The December 26, 2023 Physical Seizure of the Mazda**

**19.** On December 26, 2023 — while Plaintiff was detained and unable to protect his property — APD physically took possession of the Mazda pursuant to the NCIC hold Detective Jennings had refused to remove twenty-seven days earlier. The seizure is documented in the APD General Offense Report. (Ex. F.)

**E. The Extrajudicial Release of the Mazda and Its Destruction**

**20.** On or about February 1, 2024, the Mazda was released — without any forfeiture proceeding under Texas Code of Criminal Procedure art. 59.04, without notice to

Plaintiff, and without a judicial order — to the same previous owner who had made the false theft report. That individual scrapped the vehicle and collected an insurance payment. Where ownership of property alleged stolen is contested, the officer in custody of it "shall hold it subject to the order of the proper court." Tex. Code Crim. Proc. art. 47.01(a). No such order was ever sought or obtained. No criminal charge of any kind concerning the Mazda was ever filed against Plaintiff.

**F. The Mercedes AMG GT 63 S — Acquisition**

**21.** On or about November 3, 2023, payment in full ($149,327.24) was transmitted by wire from Horizon Bank to BJ Motors in Tomball, Texas for the benefit of Plaintiff for a 2021 Mercedes-AMG GT 63 S (VIN# W1K2J5KB7LA075512). Plaintiff signed the dealership paperwork and took possession of the vehicle. (Ex. Q, MVR records; Ex. F.) Plaintiff thereafter became the registered owner.

**22.** Plaintiff made significant aftermarket modifications to the Mercedes. The fair market value of the vehicle, as modified, exceeded the base purchase price.

**G. The False "Deceased" Civil Assertion and the Civil Dispute with Horizon Bank**

**23.** On or about November 21, 2023, Horizon Bank filed a civil action asserting that Plaintiff was "deceased" and that the transaction was fraudulent. The assertion was demonstrably false: Plaintiff was and is alive, and his communications with Cockshutt's office and others post-dating that assertion confirm his continued existence. Plaintiff personally disputed the assertion in writing.

**24.** The dispute with Horizon Bank and BJ Motors was, at its core, a civil contract dispute — not a criminal matter.

**H. The December 14, 2023 Arrest, Plaintiff's Lawful Recovery of the Mercedes, and the January 25, 2024 Forcible Re-Seizure by Sergeant Lomovstev**

**25.** Following Horizon Bank's civil suit against it, BJ Motors filed a false theft report concerning the Mercedes with the Harris County Sheriff's Department. On December 14, 2023, a state trooper stopped Plaintiff based on the resulting stolen-vehicle flag, arrested

him on a charge of Unauthorized Use of a Motor Vehicle, and caused the Mercedes to be towed to a licensed vehicle storage facility. (Ex. I; Ex. T.)

**26.** On or about January 17, 2024, the vehicle storage facility released the Mercedes to Plaintiff as its lawful owner. The facility's statutory notices — generated from the Texas Motor Vehicle Record (MVR) — identified Plaintiff as the vehicle's registered owner and were mailed to Plaintiff's home address. (Ex. Q.) Plaintiff's ownership was thus established yet again, through the State's own records and statutory storage-facility process, before the events of January 25, 2024.

**27.** In the days preceding January 25, 2024, Detective Jennings told Plaintiff that he could recover the Mazda by appearing at APD headquarters at 1520 Rutherford Lane to sign paperwork and provide a statement. (Ex. R, Jennings/Sailors Email Chain, Jan. 17-23, 2024.) When Plaintiff appeared on January 25, 2024, Detective Jennings was not present; Sergeant Lomovstev conducted the encounter instead — and rather than returning the Mazda, seized the Mercedes. Plaintiff came to recover one vehicle and left having lost the other.

**28.** The January 25, 2024 interview was recorded on Axon body-camera video, which ADA Cockshutt later produced in criminal discovery. (Ex. E.) The recorded interview addressed both of Plaintiff's vehicles. The Mazda — then still in APD custody, and as to which no charge against Plaintiff was ever brought — was never released to Plaintiff; on or about February 1, 2024, it was released to the false reporter, who destroyed it. As to the Mercedes, Sergeant Lomovstev admitted on the recording, in his own words, that he personally controlled the theft hold: "It wasn't [the] DA's office, I lifted the hold on it." And Sergeant Lomovstev twice acknowledged Plaintiff's ownership on the recording: when Plaintiff stated "It has my name on the MVR record," Sergeant Lomovstev answered "Yes"; and when Plaintiff stated "I'm the registered owner of that vehicle," Sergeant Lomovstev again answered "Yes." He seized the vehicle anyway.

**29.** Notwithstanding those acknowledgments, Sergeant Lomovstev forcibly took possession of the Mercedes under display of authority and threat of arrest, telling Plaintiff, as the recording reflects: “you can give us the key or we'll take the key from you.” The seizure was conducted without a warrant, without probable cause for a criminal offense, and without any forfeiture petition or judicial order — and it re-seized a vehicle that the State's own statutory storage-facility process had released to Plaintiff, as its registered owner, only eight days earlier, after Sergeant Lomovstev had himself lifted the theft hold.

**I. Officer Ogle's Presence and Failure to Intervene**

**30.** Officer Julian Ogle was physically present at the January 25, 2024 Mercedes seizure and is identifiable on the Axon body-camera recording. (Ex. E.) Officer Ogle observed Sergeant Lomovstev's forcible taking and did not intervene to prevent it.

**31.** Officer Ogle's disregard for judicial process is a matter of documented Austin Police Department record predating these events. On January 17, 2020, then-Chief of Police Brian Manley issued a memorandum temporarily suspending Officer Ogle for ten (10) days under Internal Affairs Control No. 2019-0530. (Ex. G.) The memorandum's findings state that on July 26, 2019, while meeting with attorneys of the Travis County District Attorney's Office to prepare for trial, Officer Ogle made a comment about a judge's decision to release certain defendants on personal recognizance bonds. Two Assistant District Attorneys who were present reported the comment; one recalled it as “Too bad that this judge [Judge Tamara Needles] wasn't the one that was shot,” and the other as “Too bad it wasn't her . . . that was shot instead of Judge Kocurek.” Officer Ogle acknowledged to Internal Affairs that his comment was to the effect that it was “too bad Judge Tamara Needles was not shot, instead of Judge Kocurek,” and that he had violated APD Policy 972.4 (Prohibited Speech, Expression and Conduct) and Policy 900.3.2 (Acts Bringing Discredit Upon the Department). (Ex. G.) An officer who has expressed, in the documented findings of his own department, that a judge should have been shot for

granting personal recognizance bonds is an officer whose willingness to disregard judicial process — and to stand by while property is seized without any judicial order — is neither implausible nor speculative.

**32.** The Travis County District Attorney's Office had first-hand, documented knowledge of Officer Ogle's misconduct: two of its own Assistant District Attorneys were the witnesses who reported the comment that led to his suspension. (Ex. G.) That knowledge is material to Defendant Cockshutt's conduct alleged herein.

**33.** Sergeant Lomovstev's record of alleged constitutional violations committed under color of law is likewise a matter of documented public record. On February 17, 2022, a Travis County grand jury returned a two-count indictment against Sergeant Lomovstev in Cause No. D1DC21900126, in the 390th Judicial District Court (Special), charging him with two counts of Aggravated Assault by a Public Servant, a first-degree felony under Tex. Penal Code § 22.02(b)(2)(A). (Ex. N.) The indictment alleges that on or about May 31, 2020, Sergeant Lomovstev "intentionally, knowingly, and recklessly cause[d] serious bodily injury" to a named complainant "by shooting [the complainant] with a firearm; to wit, a shotgun," and that he "did use and exhibit a deadly weapon," while "a public servant, to wit: an Austin Police Department peace officer, acting under color of his office and employment." (Ex. N.) Plaintiff alleges the fact of the indictment; he does not allege that it resulted in a conviction.

**34.** The indictment was returned by a grand jury of the same county, and the prosecution was brought by the same District Attorney's Office, that employed Defendant Cockshutt. Together with the Ogle suspension memorandum that Defendant Cockshutt herself produced in criminal discovery (Ex. G), these records establish that the conduct of the two officers who directed and executed the seizure of Plaintiff's Mercedes — a supervising sergeant previously charged with using a deadly weapon under color of his office, and a detective disciplined for saying a judge should have been shot — was

documented and known within the very office on which Plaintiff depended for the protection of the law.

**J. The Extrajudicial Transfer of the Mercedes Title to Horizon Bank**

**35.** Following Sergeant Lomovstev's seizure of the Mercedes, APD caused the title to be reassigned to Horizon Bank — a private third party — without any forfeiture petition under Tex. Code Crim. Proc. art. 59.04, without notice to Plaintiff, and without any judicial order. The transfer was confirmed in writing by TxDMV Investigator Billy Curry on February 2, 2024: “the title has been reassigned to Horizon Bank.” (Ex. J, TxDMV Case No. 24-0004268.)

**36.** Officer Aguilar and Sergeant Lomovstev facilitated communications between Horizon Bank and APD that resulted in this extrajudicial title transfer.

**K. The DA's Rejection of the UUMV Charge After Ten Months**

**37.** Travis County District Court Case No. D-1-DC-23-209819, the Unauthorized Use of a Motor Vehicle charge arising from the Mercedes events, was filed December 16, 2023. The case proceeded through ten (10) unindicted designations over more than ten months. On October 25, 2024, the Travis County District Attorney's Office entered “DA REJECTION/NO CHARGES FILED.” (Ex. T, Case Summary D-1-DC-23-209819.) The same December 14, 2023 traffic stop also generated Travis County Case No. D-1-DC-23-209817, which was likewise subsequently dismissed. (Ex. I.) Every criminal charge arising from the Mercedes events was ultimately dismissed or rejected.

**L. Plaintiff's Exhaustion of State and Administrative Remedies**

**38.** Plaintiff exhausted every state and administrative remedy reasonably available to him: (a) a written demand to the City of Austin (unanswered); (b) a complaint to the APD Public Integrity Command unit (no corrective action); (c) a complaint to the Austin Police Oversight Office, intake December 4–5, 2023 (Ex. H); (d) a TxDMV complaint, Case

No. 24-0004268 (Ex. J); and (e) a Chapter 47 property hearing in Austin Municipal Court Case No. AMC00681634 (Ex. S).

**39.** The Chapter 47 hearing was rendered fruitless because APD had already caused the title to be reassigned to Horizon Bank eighteen (18) months before Plaintiff was able to file the Chapter 47 claim, and more than two (2) years before the rescheduled hearing date of February 18, 2026. Plaintiff respectfully requests that the Court take judicial notice of Austin Municipal Court Case No. AMC00681634 pursuant to Federal Rule of Evidence 201.

## IV. STATEMENT OF EACH DEFENDANT'S INDIVIDUAL CONDUCT

### A. Detective Kyle Jennings #7076

**40.** Detective Jennings is liable for: (a) maintaining the NCIC hold on the Mazda after receiving Plaintiff's documented proof of ownership on November 29, 2023 (Ex. R); (b) coordinating with Sergeant Lomovstev, whom he copied on the November 29, 2023 transmission; (c) causing the physical seizure of the Mazda on December 26, 2023 based on a hold he knew, or had no reasonable basis to maintain, after his receipt of Plaintiff's ownership documentation.

### B. Sergeant Alexander Lomovstev #6317

**41.** Sergeant Lomovstev is liable for: (a) coordinating the seizures of both vehicles; (b) personally and forcibly taking possession of Plaintiff's Mercedes on January 25, 2024 under display of authority and threat of arrest, without warrant, probable cause, or pre-deprivation process (Ex. E); (c) acknowledging on camera that Plaintiff was the registered owner and proceeding with the seizure regardless; and (d) facilitating the extrajudicial transfer of the Mercedes title to Horizon Bank without forfeiture, notice, or judicial order (Ex. J).

### C. Officer Julian Ogle #7787

**42.** Officer Ogle is liable for: (a) coordinating with Detective Jennings in the maintenance of the holds, per Officer Bynum's admission (Ex. F at 29); and (b) failure to intervene — being physically present at the January 25, 2024 forcible Mercedes seizure (Ex. E), knowing it was being conducted without warrant or probable cause for a criminal offense, having a reasonable opportunity to intervene, and choosing not to.

**D. Officer Jonathan Bynum #5611**

**43.** Officer Bynum is liable for: (a) placing the “extended holds on both vehicles for Det Jennings and Det Ogle” by his own admission (Ex. F at 29); (b) participating in the coordinated maintenance of the unlawful holds; and (c) doing so with knowledge that the holds were being maintained absent lawful basis.

**E. Officer Joe Aguilar #8267**

**44.** Officer Aguilar is liable for: (a) facilitating communications between Horizon Bank, a private third party, and APD personnel that resulted in the extrajudicial transfer of the Mercedes title without any forfeiture proceeding; and (b) participating in the conspiracy alleged in Count III to deprive Plaintiff of his property without due process. Officer Aguilar is identified as a participating officer in the APD General Offense Report. (Ex. F.)

**F. Officer John Doe — Present at the Mercedes Seizure; Failure to Intervene**

**45.** Defendant John Doe was present at the January 25, 2024 forcible seizure of Plaintiff's Mercedes and is depicted on the Axon body-camera recording. (Ex. E.) Defendant Doe observed Sergeant Lomovstev's warrantless taking of Plaintiff's vehicle, knew or reasonably should have known it was being conducted without warrant or probable cause for a criminal offense, had a reasonable opportunity to intervene, and did not. Plaintiff contemporaneously called out those present, as the recording reflects in its closing moments: “y'all guys know that y'all guys just witness[ed this], right?” Defendant Doe's identity was concealed from Plaintiff at the scene: Sergeant Lomovstev introduced the

later-arriving officers under false names, as the recording reflects. Plaintiff will substitute Defendant Doe's true name upon disclosure in discovery.

**G. Assistant District Attorney Willa Cockshutt**

**46.** ADA Cockshutt is sued only for non-advocacy conduct — administrative, investigative, or personal acts and omissions not entitled to absolute prosecutorial immunity — including: (a) her role, with actual first-hand knowledge, in the continued retention of Plaintiff's seized property without legal process; (b) her participation, through inaction with actual knowledge, in the extrajudicial disposition of the Mercedes title to a private third party without any forfeiture proceeding; and (c) her participation in the § 1983 conspiracy alleged in Count III. She personally possessed, reviewed, and produced in criminal discovery the Axon interview recording (Ex. E); she likewise produced in criminal discovery the Austin Police Department memorandum documenting Officer Ogle's ten-day suspension and his admitted statement that a judge should have been shot (Ex. G) — establishing that she personally possessed, and was aware of, that record while relying on Officer Ogle's investigative work; she personally received Plaintiff's written communications of August 10 and 20, 2025 identifying officer misconduct, the false name used at the scene, and Officer Ogle's presence (Exs. L, P); and she took no corrective action at any time.

**47.** ADA Cockshutt's knowledge of the Mazda deprivation was personal and non-prosecutorial. No criminal charge relating to the Mazda CX-5 was ever filed against Plaintiff, and ADA Cockshutt accordingly never served as prosecutor of any Mazda-related matter. Her knowledge of the Mazda deprivation derives from her personal viewing of the Axon interview recording (Ex. E) — the first portion of which concerns the Mazda — and from Plaintiff's direct written communications to her requesting dismissal of charges arising from the involvement of officers with documented misconduct records. (Exs. L, P.) Because no Mazda prosecution existed, no advocacy

function could attach to her knowledge of, or inaction concerning, the Mazda deprivation; that conduct was necessarily investigative or personal in character and is not shielded by absolute prosecutorial immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 273-76 (1993) (prosecutor acting outside the advocate's role receives at most qualified immunity). This allegation rests on Defendant Cockshutt's own personal acts and knowledge — not on any knowledge imputed from the District Attorney's office. Plaintiff further alleges, on information and belief and as likely to have evidentiary support after a reasonable opportunity for discovery, Fed. R. Civ. P. 11(b)(3), that ADA Cockshutt's involvement reflected personal interest or motive beyond the scope of her official duties, as to which her communications with the Officer Defendants — presently in Defendants' exclusive possession — are the direct evidence.

## V. CLAIMS FOR RELIEF

### Count I — Fourth Amendment Unreasonable Seizure (42 U.S.C. § 1983)

**48.** Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**49.** A vehicle is "effects" within the meaning of the Fourth Amendment. Soldal v. Cook County, 506 U.S. 56, 61-68 (1992). Its warrantless seizure absent probable cause or a recognized exception violates the Fourth Amendment. United States v. Place, 462 U.S. 696 (1983). A seizure occurs upon any "meaningful interference with an individual's possessory interests" in property, United States v. Jacobsen, 466 U.S. 109, 113 (1984) — a definition that reaches the maintenance of the law-enforcement holds themselves, not merely the physical takings.

**50.** Defendants Jennings, Lomovstev, Ogle, Aguilar, and Bynum each personally participated in the seizure and continued retention of Plaintiff's vehicles without warrant, without probable cause for a criminal offense, and without a recognized exception to the warrant requirement.

### Count II — Fourteenth Amendment Procedural Due Process (42 U.S.C. § 1983)

**51.** Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**52.** Plaintiff possessed a constitutionally protected property interest in each vehicle as the documented registered owner.

**53.** Defendants deprived Plaintiff of those property interests without constitutionally adequate process. Absent extraordinary circumstances, the State must afford notice and an opportunity to be heard before taking a person's property. Fuentes v. Shevin, 407 U.S. 67, 80-84 (1972). The deprivations were deliberate and targeted, not random and unauthorized; pre-deprivation process was practicable; and Texas's post-deprivation remedies were rendered inadequate in fact, as documented by the fruitless Chapter 47 proceeding (Ex. S). Zinermon v. Burch, 494 U.S. 113 (1990); Mathews v. Eldridge, 424 U.S. 319 (1976).

**Count III — Civil Conspiracy Under 42 U.S.C. § 1983**

**54.** Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**55.** Defendants reached an agreement — circumstantially demonstrated by their coordinated conduct across both vehicle seizures, including Detective Jennings's copying of Sergeant Lomovstev on the Mazda communications, Officer Bynum's admission of placing the holds "for Det Jennings and Det Ogle," the coordinated execution of the Mercedes seizure by Lomovstev and Ogle, and the coordination with Horizon Bank for the extrajudicial title transfer — to deprive Plaintiff of his federally protected rights, and committed overt acts in furtherance of that agreement causing the deprivations alleged. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994); Hobbs v. Hawkins, 968 F.2d 471 (5th Cir. 1992). This Count re-pleads, under its proper statutory basis of 42 U.S.C. § 1983, the civil-conspiracy claim that Count III of the Original Complaint mislabeled as arising under § 1985(3); the substance of the claim — a meeting of the minds to deprive Plaintiff of federally protected rights, with overt acts and injury — is unchanged, and racial animus is not and never was alleged as an element. See Johnson v. City of Shelby,

574 U.S. 10, 11-12 (2014) (per curiam) (imperfect statement of the legal theory does not warrant dismissal).

**Count IV — Failure to Intervene (42 U.S.C. § 1983)**

**56.** Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**57.** An officer present at a fellow officer's constitutional violation has a duty to intervene where he has a reasonable opportunity to do so. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995); Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). Officer Ogle and Defendant John Doe, each present at the January 25, 2024 forcible Mercedes seizure (Ex. E), with knowledge that the seizure was being conducted without warrant or probable cause for a criminal offense, and with a reasonable opportunity to intervene, did not.

## VI. LIMITATIONS, HECK, AND MONELL RESERVATION

**58.** Plaintiff's claims are timely. The Mercedes claims arise from a January 25, 2024 seizure and are within the two-year limitations period of Tex. Civ. Prac. & Rem. Code § 16.003 as applied to § 1983 claims. Owens v. Okure, 488 U.S. 235 (1989). The Mazda claims rest on discrete deprivations — including the continued withholding of the Mazda from its documented owner through and after the January 25, 2024 recorded interview (¶ 28), and the extrajudicial release and destruction of the vehicle on or about February 1, 2024 — each within the limitations period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-14 (2002); Wallace v. Kato, 549 U.S. 384 (2007). The conspiracy claim is timely as to every overt act committed within the limitations period.

**59.** This action is not barred by Heck v. Humphrey, 512 U.S. 477 (1994). Plaintiff challenges unconstitutional property deprivations that are independent of, and do not imply the invalidity of, any criminal conviction or sentence. Every criminal charge arising from the events pleaded herein was dismissed or rejected without conviction.

**60.** The Parratt/Hudson doctrine does not apply. The deprivations pleaded were deliberate, targeted, and anticipated — not random and unauthorized — and pre-deprivation process

was practicable. Zinermon v. Burch, 494 U.S. 113, 136-38 (1990). Texas's post-deprivation remedies were rendered inadequate in fact, as documented by the fruitless Chapter 47 proceeding. (Ex. S.)

**61.** No claim is based on respondeat superior. Each Defendant is sued only for his or her personal participation, coordination, or deliberate failure to intervene.

**62.** Plaintiff reserves the right to seek leave to amend to assert municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), upon discovery of the full scope of the policies, customs, ratification, or training failures bearing on the violations pleaded herein — a reservation Defendants acknowledged in their May 21, 2026 extension motion. (Dkt. 8 at 2.)

## VII. DAMAGES

**63.** Plaintiff seeks compensatory damages — economic and non-economic — in a total amount of not less than $5,500,000, in amounts to be proven at trial, including but not limited to: (a) the fair market value of the Mercedes-AMG GT 63 S as modified at the time of seizure, no less than $150,000; (b) the fair market value of the Mazda CX-5 at the time of seizure, no less than $40,000; (c) lost income and lost business value arising from the deprivation of Plaintiff's vehicles and the related criminal proceedings; (d) out-of-pocket losses including prepaid insurance and registration; (e) loss of use and transportation costs; and (f) emotional distress, including post-traumatic stress and dignitary harm.

**64.** Plaintiff seeks punitive damages against Defendants Jennings, Lomovstev, Ogle, and Cockshutt only, in their individual capacities (not against any municipal entity, and not against Defendants Aguilar, Bynum, or Doe), for their deliberate, reckless, and callous indifference to Plaintiff's federally protected rights, in an aggregate amount of $6,500,000, or such other amount as the jury may determine. Smith v. Wade, 461 U.S. 30

(1983); see City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (municipal punitive immunity). Plaintiff's total demand is $12,000,000.

**65.** Plaintiff seeks costs of court, and such other and further relief as the Court may deem just and proper. Plaintiff is proceeding pro se and accordingly does not seek attorney's fees under 42 U.S.C. § 1988.

## VIII. JURY DEMAND

**66.** Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) ENTER JUDGMENT in Plaintiff's favor on each Count;

(b) AWARD compensatory damages — economic and non-economic — of not less than $5,500,000, in amounts to be proven at trial;

(c) AWARD punitive damages against Defendants Jennings, Lomovstev, Ogle, and Cockshutt, in their individual capacities, in an aggregate amount of $6,500,000, or such other amount as the jury may determine;

(d) TAKE JUDICIAL NOTICE under Federal Rule of Evidence 201 of (i) Austin Municipal Court Case No. AMC00681634, and (ii) Travis County District Court Case Nos. D-1-DC-23-209817 and D-1-DC-23-209819;

(e) AWARD costs of court; and

(f) GRANT such other and further relief as the Court deems just and proper.

## X. EXHIBITS INCORPORATED BY REFERENCE

The following exhibits were previously filed with Plaintiff's Response in Opposition to Defendant Cockshutt's Motion to Dismiss at Dkt. 10 and its attachments, and are incorporated by

reference herein. Exhibit E (Axon body-camera video) was submitted by manual filing with the Clerk's Office.

**Ex. A:** Title Transfer Receipt — Mazda CX-5 (Sept. 11, 2023)
**Ex. B:** 311 Police Report (Sept. 22, 2023)
**Ex. B1:** Threatening Text Messages from Prior Owner
**Ex. C:** APD Auto Theft Email — "no stolen vehicle report" (Nov. 8, 2023)
**Ex. D:** Demand for Remedy to APD Auto Theft (Nov. 13, 2023)
**Ex. E:** Axon Body-Camera Recording — Lomovstev/Ogle at Mercedes Seizure (manually filed)
**Ex. F:** APD General Offense Report, GO# 2023-2920641 — including Bynum narrative at p. 29
**Ex. G:** APD Memorandum of Chief Brian Manley — Temporary Suspension of Officer Julian Ogle #7787, IA Control No. 2019-0530 (Jan. 17, 2020)
**Ex. H:** Office of Police Oversight Intake (Dec. 4–5, 2023)
**Ex. I:** Arrest Record — Travis County Case No. D-1-DC-23-209817 (subsequently dismissed)
**Ex. J:** TxDMV Complaint File, Case No. 24-0004268 — Horizon Bank title-transfer confirmation
**Ex. L:** Email Correspondence to ADA Cockshutt (Aug. 10 and 20, 2025)
**Ex. N:** Grand Jury Indictment, State of Texas v. Alexander Lomovstev, Travis County Cause No. D1DC21900126, 390th Judicial District Court (Feb. 17, 2022)
**Ex. P:** Photo of Officer Ogle Under False Name Submitted to ADA Cockshutt (Aug. 10, 2025)
**Ex. Q:** TxDMV Motor Vehicle Record (MVR) Notices — Plaintiff as Registered Owner (filed at Dkt. 10 as "TxDMV NPR Records")
**Ex. R:** Jennings/Sailors Email Chain (Nov. 29, 2023 – Jan. 23, 2024)
**Ex. S:** Austin Municipal Court Case No. AMC00681634 — Chapter 47 Property Hearing
**Ex. T:** Travis County Case Summary D-1-DC-23-209819 — DA Rejection (Oct. 25, 2024)

Respectfully submitted,

/s/ James Michael Sailors
James Michael Sailors, Pro Se
1300 W 24th Street, B109
Austin, Texas 78705
Tel: 512-848-3289
james.sailors22@gmail.com

Date: 07/31/2026

---

**CERTIFICATE OF SERVICE**

I certify that on the date signed above, a true and correct copy of the foregoing was served upon Defendants' counsel of record — Luke McHenry, Assistant City Attorney, City of Austin, P.O. Box 1546, Austin, Texas 78767-1546; Elaine Casas and Susana Naranjo-Padron, Travis County Attorney's Office, P.O. Box 1748, Austin, Texas 78767 — via the Court's CM/ECF system and electronic mail.

/s/ James Michael Sailors
James Michael Sailors