**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JAMES MICHAEL SAILORS,

Plaintiff,

v. Civil Action No. 1:26-CV-00165-DAE

OFC. KYLE JENNINGS #7076,

SGT. ALEXANDER LOMOVSTEV #6317,

OFC. JULIAN OGLE #7787,

OFC. VINCENT NGUYEN #9583,

OFC. JOE AGUILAR #8267,

OFC. JONATHAN BYNUM #5611,

ADA WILLA COCKSHUTT,

Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

TO THE HONORABLE DAVID A. EZRA, UNITED STATES DISTRICT JUDGE:

Plaintiff James Michael Sailors, proceeding pro se, files this Reply in support of his Motion for Leave to File First Amended Complaint and in response to the Defendant Officers' Response in Opposition. Plaintiff has narrowed his request in two respects described below, and respectfully submits that leave should be granted as to the remainder.

## I. THE SCOPE OF THE DISPUTE IS NARROW, AND THE CENTRAL OBJECTION TO THE ORIGINAL COMPLAINT IS NOW RESOLVED

Defendants' Response opens by acknowledging that the proposed First Amended Complaint "adds individualized factual detail as to several Officers." (Resp. at 1.) That concession resolves the principal objection Defendants advanced against the Original Complaint — that it engaged in impermissible group pleading and failed to identify what each Officer did. (See Dkt. 17 at 5-7; Dkt. 24 at 1-4.) The amendment accomplishes precisely what Defendants said was required: "If the Court concludes that a more definite statement or amendment is warranted, the proper course is to require Plaintiff to file one." (Dkt. 24 at 3.)

Defendants do not oppose leave as to the Fourth Amendment claim concerning the Mercedes-AMG; they do not oppose Count IV (failure to intervene); they do not oppose the individualized allegations against Detective Jennings, Sergeant Lomovstev, Officer Ogle, Officer Aguilar, or Officer Bynum; and they do not contend the amendment was sought in bad faith, after undue delay, or that it would prejudice them. Under Rule 15(a)(2) and Foman v. Davis, 371 U.S. 178, 182 (1962), leave should be granted as to all of it.

## II. PLAINTIFF WITHDRAWS THE PROPOSED "OFFICER JOHN DOE" DEFENDANT

Defendants are correct that Whitt v. Stephens County, 529 F.3d 278, 282-83 (5th Cir. 2008), and Jacobsen v. Osborne, 133 F.3d 315, 320-21 (5th Cir. 1998), hold that an amendment substituting a named party for a "John Doe" does not relate back under Rule 15(c), because a plaintiff's lack of knowledge of a defendant's identity is not a "mistake concerning the proper party's identity." Plaintiff does not ask this Court to disregard binding authority.

Plaintiff therefore WITHDRAWS the proposed "Officer John Doe" defendant from the First Amended Complaint. Plaintiff will file a conforming version of the First Amended Complaint omitting that defendant, and correspondingly omitting the allegations at proposed paragraphs 5 and 42 and the reference to Defendant Doe in proposed paragraph 57, upon the Court's order granting leave. Plaintiff reserves the right to seek leave at a later stage should

discovery establish facts supporting relation back or equitable tolling as to any presently unidentified officer. This withdrawal moots Section III.B of Defendants' Response.

## III. THE MAZDA CLAIMS: DEFENDANTS CONCEDE THE DISPOSITION CLAIM IS TIMELY, AND PLAINTIFF NARROWS THE FOURTH AMENDMENT THEORY ACCORDINGLY

Defendants' limitations argument concerns one theory only: a Fourth Amendment claim premised on the December 26, 2023 physical taking of the Mazda. In making that argument, Defendants concede the point that matters. They state that “the destruction and extrajudicial release of already-seized property may, at most, support a distinct and separately-accruing due process theory concerning the disposition of that property.” (Resp. at 3.) Plaintiff accepts that concession. The disposition of the Mazda — its release on or about February 1, 2024 to the very individual who made the false theft report, and its destruction thereafter — is a separately-accruing deprivation, and it is indisputably within the two-year period preceding the January 22, 2026 filing.

To the extent Defendants contend that a Fourth Amendment claim premised solely on the December 26, 2023 taking is untimely, Plaintiff does not press that discrete theory and clarifies that his Fourth Amendment allegations as to the Mazda rest on Defendants' continued retention of the vehicle within the limitations period. A seizure of property continues for Fourth Amendment purposes so long as there is “meaningful interference with an individual's possessory interests in that property.” United States v. Jacobsen, 466 U.S. 109, 113 (1984). On January 25, 2024 — within the limitations period — Defendants still held the Mazda, no charge concerning it had ever been filed against Plaintiff, and it was not returned to him. Within days it was released to the false reporter and destroyed.

In all events, no purpose would be served by denying leave as to the Mazda. The operative facts are identical across Counts I and II, Defendants concede a timely due process theory arising from the same conduct, and any limitations question as to a particular theory is

properly resolved on a motion directed at the operative pleading — which Defendants have asked leave to file — rather than by refusing to allow the pleading in the first place.

## IV. THE PROCEDURAL DUE PROCESS CLAIM IS NOT FUTILE: TEXAS LAW COMMANDED PRE-DEPRIVATION PROCESS THAT DEFENDANTS BYPASSED

Defendants argue that because Plaintiff alleges the Officers deviated from Texas forfeiture procedure, their conduct is by definition "random and unauthorized" under Hudson v. Palmer. (Resp. at 5-6.) That framing proves too much: on Defendants' logic, no deprivation of property by a state actor could ever violate procedural due process, because any unlawful deprivation is by definition a departure from law. Zinermon forecloses that reading.

The controlling question is not whether the Officers followed the law; it is whether the State was in a position to provide process before the deprivation and failed to do so. Zinermon v. Burch, 494 U.S. 113, 136-39 (1990). Here it plainly was. Texas law did not leave the disposition of contested property to officer discretion — it commanded a judicial determination: "An officer who comes into custody of property alleged to have been stolen shall hold it subject to the order of the proper court . . . if the ownership of the property is contested or disputed." Tex. Code Crim. Proc. art. 47.01(a) (emphasis added). Ownership of both vehicles was contested; that contest was the stated basis for the holds. The State therefore had an established procedure — a mandatory one — under which a court, not a peace officer, was to decide who was entitled to the property.

The deprivations were also entirely predictable rather than random. Detective Jennings received documentary proof of ownership on November 29, 2023, twenty-seven days before the Mazda was physically taken, and the APD Auto Theft Unit had already advised Plaintiff in writing that it could find no stolen-vehicle report. Sergeant Lomovstev acknowledged Plaintiff's registered ownership on a recorded interview before seizing the Mercedes, and had himself lifted the theft hold on that vehicle. Defendants knew precisely whose property they held and what the law required them to do with it. Deprivation under those circumstances is not the unforeseeable

act of a rogue employee that Parratt and Hudson address. Nor was it “unauthorized” in Parratt's sense. The Officers were the very officials to whom the State delegated custody of contested property, together with the statutory duty to route that property to a court. Zinermon holds that a deprivation is not “unauthorized” merely because state law did not sanction it, where it is accomplished through “an official's abuse of his position” by officials clothed with the State's delegated power and charged with its duty to provide process. Zinermon, 494 U.S. at 138.

Defendants' remaining argument — that any inadequacy of the Chapter 47 remedy is attributable to “a plaintiff's own delay in invoking it” (Resp. at 6) — is refuted by the chronology in the pleading. The Mercedes title was reassigned to Horizon Bank as of February 2, 2024. The remedy was therefore already incapable of restoring the property before any Chapter 47 claim could have been filed, and it remained so throughout the period in which Plaintiff was detained and subject to the prosecution that Defendants' own office did not resolve until it entered “DA REJECTION/NO CHARGES FILED” on October 25, 2024. A post-deprivation remedy that the wrongdoer has rendered incapable of restoring the property before it can be invoked is not a “meaningful” remedy. Hudson, 468 U.S. at 534. And the Texas conversion tort on which Defendants principally rely is precisely the kind of remedy the Supreme Court has described as “lengthy and speculative” and unlikely ever to “make the complainant entirely whole” — particularly where, as here, the property has been destroyed. Logan v. Zimmerman Brush Co., 455 U.S. 422, 436-37 (1982). Plaintiff will conform the pleading to state these dates expressly.

## V. THE CONSPIRACY CLAIM IS ADEQUATELY PLEADED: THE CONDUCT ALLEGED IS NOT THE ORDINARY PERFORMANCE OF POLICE DUTIES

Defendants characterize the conspiracy allegations as describing officers “performing their assigned duties and communicating with one another . . . in the ordinary course.” (Resp. at 7.) That characterization omits the central allegation of the pleading.

Detective Jennings told Plaintiff he could recover the Mazda by appearing at Austin Police Department headquarters to sign paperwork and give a statement. When Plaintiff

appeared on January 25, 2024, Detective Jennings was not there. Sergeant Lomovstev conducted the encounter instead — and rather than returning the Mazda, seized the Mercedes. Plaintiff came to recover one vehicle and left having lost the other. Officers discharging ordinary duties do not summon a citizen to retrieve one vehicle in order to take a different one. That sequence required advance coordination between at least two Officers, and it is not explicable as routine communication among co-workers.

It is joined by other allegations that are not ordinary either: Officer Bynum did not place holds of his own initiative but, in his own written words, "placed extended holds on both vehicles for Det Jennings and Det Ogle"; Sergeant Lomovstev introduced later-arriving officers under false names during the seizure; and the Mercedes title was transferred to a private bank with no forfeiture petition, no notice, and no court order.

A § 1983 conspiracy may be established by circumstantial evidence, because conspirators rarely announce their agreement. Hobbs v. Hawkins, 968 F.2d 471, 480 (5th Cir. 1992). At the pleading stage, Plaintiff need not plead the "when" and "how" of an agreement to which he was not privy; the direct evidence — Defendants' internal communications concerning Plaintiff's vehicles — is in Defendants' exclusive possession and obtainable only through discovery. Requiring a plaintiff to plead the contents of communications he has never seen would make conspiracy claims against state actors unpleadable as a category.

## VI. PLAINTIFF DOES NOT OPPOSE DEFENDANTS' REQUEST TO FILE A RENEWED MOTION

Defendants expressly decline to brief qualified immunity in their Response and instead request leave to file a renewed Rule 12(b)(6) and qualified-immunity motion directed at the operative pleading. (Resp. at 8.) Plaintiff does not oppose that request. It confirms the correct disposition here: the operative pleading should be settled first, and the parties' remaining disputes briefed against it. That is an argument for granting leave, not denying it.

## VII. CONCLUSION AND PRAYER

Plaintiff has withdrawn the sole defendant as to whom Defendants identified binding contrary authority, and has narrowed the single theory Defendants showed to be untimely — accepting in the process Defendants' own concession that the disposition of the Mazda supports a separately-accruing claim. What remains is a pleading that supplies exactly the officer-by-officer detail Defendants said was missing, drawn almost entirely from Defendants' own records.

Plaintiff respectfully requests that the Court GRANT leave to file the First Amended Complaint, omitting the withdrawn "Officer John Doe" defendant; GRANT Defendants leave to file a renewed Rule 12(b)(6) and qualified-immunity motion directed at the operative pleading within twenty-one (21) days; and grant such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ James Michael Sailors
James Michael Sailors, Pro Se
1300 W 24th Street, B109
Austin, Texas 78705
Tel: 512-848-3289
james.sailors22@gmail.com
Date:08-15-2026

## CERTIFICATE OF SERVICE

I certify that on the date signed above, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system and by electronic mail pursuant to the parties' written consent under Fed. R. Civ. P. 5(b)(2)(E), addressed as follows: Luke McHenry, Luke.McHenry@austintexas.gov, Assistant City Attorney, City of Austin, P.O. Box 1546, Austin, Texas 78767-1546; Elaine Casas, Elaine.Casas@traviscountytx.gov, and Susana Naranjo-Padron, Susana.Naranjo-Padron@traviscountytx.gov, Travis County Attorney's Office, P.O. Box 1748, Austin, Texas 78767.

/s/ James Michael Sailors
James Michael Sailors